UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

RIGOBERTO VASQUEZ and EVA GARCIA on behalf of
themselves and all others similarly situated,

                         Plaintiffs,

           -against-

HONG KONG AND SHANGHAI BANKING
CORPORATION LTD., a foreign company; HSBC BANK
USA, N.A., a national banking association; and DOES 1
through 100, inclusive,

                        Defendants.

1:18-CV-01876-PAE-BM

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**DEFENDANT THE HONG KONG AND SHANGHAI BANKING CORPORATION
LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND. .....................................................................................3

     A.   Plaintiffs Are California Residents Who Were Duped in California by WCM777, a Non-Party with Offices in California and Whose Principal Is a California Resident. .................................................................................3

     B.   HBAP Is a Hong Kong Banking Institution with No Connection to New York Except for Correspondent Accounts. ...................................................4

     C.   Plaintiffs' Conclusory Allegations of HBAP's Activities. .......................5

          i.    Plaintiffs allege conduct by HBAP in Hong Kong. .....................6

          ii.   Plaintiffs allege that HBAP has a correspondent account in New York. ...........................................................................................6

          iii.  Plaintiffs identify no relevant conduct elsewhere in the United States. .........................................................................................6

     D.   Plaintiffs' Counsel's First Attempt to Prosecute This Case Failed. ........7

          i.    The California Plaintiffs sued Defendants in California. .............7

          ii.   The court in the California Action ruled that HBAP was not subject to personal jurisdiction. .................................................8

          iii.  The California Plaintiffs tried to re-add HBAP in apparent bad faith. ............................................................................................8

          iv.   The court granted summary judgment and denied class certification. ...................................................................................9

          v.    Plaintiffs' counsel voluntarily dismissed the California Action appeal. ........................................................................................9

III. LEGAL STANDARD. .............................................................................................10

IV.  THE COURT LACKS PERSONAL JURISDICTION OVER HBAP UNDER NEW YORK'S LONG-ARM STATUTE AND THE UNITED STATES CONSTITUTION. ...............................................................................................11

     A.   The Court Does Not Have General Jurisdiction over HBAP. ...............11

B.     The Court Does Not Have Specific Personal Jurisdiction over HBAP. ...............12

     i.     New York's long-arm statute does not authorize specific jurisdiction over HBAP................................................................................12

          1)     HBAP does not transact business in New York............................13

          2)     Plaintiffs' claims do not arise from the fact that their wires went through New York.................................................................17

     ii.    The Constitution does not authorize specific jurisdiction over HBAP.............................................................................................18

          1)     HBAP lacks Constitutional minimum contacts with New York. ......................................................................................19

          2)     Plaintiffs' claims do not arise from the correspondent account. .........................................................................................19

C.     Exercising Personal Jurisdiction over HBAP Would Be Unreasonable................21

V.     CONCLUSION................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*,
  480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)....................................................21, 23

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999)...........................................................................................12, 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002).......................................................................................18, 19, 21

*Bensusan Rest. Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997)....................................................................................................12

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)............................................................................................12, 17

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)...................................................................................................11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).......................................................19

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014).......................................................................................11

*Calder v. Jones*,
  466 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).......................................................18

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
  No. 14-5216, 2015 WL 4164763 (S.D.N.Y. July 10, 2015)....................................................16

*Cont'l Field Serv. Corp. v. ITEC Int'l, Inc.*,
  894 F. Supp. 151 (S.D.N.Y. 1995)...........................................................................................14

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
  No. 11-7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ...................................................11

*Daimler AG v. Bauman*,
  571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)..................................................11, 12

*de Ganay v. de Ganay*,
  No. 11-6490, 2012 WL 6097693 (S.D.N.Y. Dec. 6, 2012) ...................................................12

*Doe v. Delaware State Police*,
     939 F. Supp. 2d 313 (S.D.N.Y. 2013)....................................................................14

*Doe v. Nat'l Conference of Bar Examiners*,
     No. 16-264, 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017)............................................12

*Elsevier, Inc. v. Grossman*,
     77 F. Supp. 3d 331 (S.D.N.Y. 2015).....................................................................11

*Enrenfeld v. Mahfouz*,
     881 N.E.2d 830 (N.Y. 2007)..................................................................................13

*Fisher v. Teva PFC, SRL*,
     No. 04-2780, 2005 WL 2009908 (D.N.J. Aug. 16, 2005) .....................................22

*Giron v. Hong Kong & Shanghai Bank Co., Ltd.*,
     No. 15-8869, 2016 WL 6662726 (C.D. Cal. June 29, 2016)....................................8

*Giron v. Hong Kong & Shanghai Bank Co., Ltd.*,
     No. 15-8869, 2017 WL 5495504 (C.D. Cal. Nov. 15, 2017) ..........................5, 9, 23

*Gmurzynska v. Hutton*,
     257 F. Supp. 2d 621 (S.D.N.Y. 2003)....................................................................23

*Hau Yin To v. HSBC Holdings PLC*,
     700 F. App'x 66 (2d Cir. 2017) .......................................................................13, 16

*Hau Yin To v. HSBC Holdings PLC*,
     No. 15-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).....................................16

*Hill v. HSBC Bank PLC*,
     207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................14

*In re Terrorist Attacks on September 11, 2011*,
     714 F.3d 659 (2d Cir. 2013).....................................................................10, 11, 18

*Int'l Shoe Co. v. Wash.*,
     326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)..................................................18

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
     No. 17-3793, 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017)...................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
     673 F.3d 50 (2d Cir. 2012)...............................................................10, 11, 12, 14, 16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
     732 F.3d 161 (2d Cir. 2013).............................................................................13, 14

*Licci v. Lebanese Canadian Bank,*
    984 N.E.2d 893 (N.Y. 2012)..........................................................................14, 17, 18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (1996)...................................................................................................22

*Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. (c) v. Bahrain*
    *Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016)..............................................................................15, 16

*Pablo Star Ltd. v. Welsh Gov't,*
    170 F. Supp. 3d 597 (S.D.N.Y. 2016)....................................................................10

*Pico v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ..................................................................................8

*Receivers of Sabena S.A. v. Deutsche Bank A.G.,*
    142 A.D.3d 242 (N.Y. App. Div. 2016) ..................................................................17

*Rushaid v. Pictect & Cie,*
    68 N.E.3d 1 (N.Y. 2016)......................................................................................15, 16

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*
    *Kommanditgesellschaft v. Navimpex Centrala Navala,*
    989 F.2d 572 (2d Cir. 1993)....................................................................................10

*Sherwin-Williams Co. v. Avisep, S.A. De C.V.,*
    No. 14-6227, 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ................................22, 23

*Sonera Holding B V v. CuKurova Holding AS,*
    750 F.3d 224 (2d Cir. 2014)....................................................................................12

*SPV Osus Ltd. v. UBS AG,*
    882 F.3d 333 (2d Cir. 2018)..............................................................................19, 20

*Sunward Elec., Inc. v. McDonald,*
    362 F.3d 17 (2d Cir. 2004)......................................................................................10

*Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth,*
    500 F. Supp. 565 (C.D. Cal. 1980) .....................................................................8, 20

*Walden v. Fiore,*
    571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)..................................18, 19

**Statutes**

18 U.S.C. § 1961....................................................................................2, 3, 7, 11

18 U.S.C. § 1965(b) ...........................................................................................11

Cal. Bus. & Prof. Code § 17200 ........................................................................................7

**Rules**

Fed. R. Civ. P. 4(k) ........................................................................................................10

Fed. R. Civ. P. 12(b)(6)...................................................................................................11

N.Y. C.P.L.R. § 302..............................................................................2, 11, 12, 14, 19

## I.       INTRODUCTION

Plaintiffs Rigoberto Vasquez and Eva Garcia ("Plaintiffs") are residents of California who wired money from their banks in California to Hong Kong. They sent their money to Hong Kong to invest in a company called WCM777, which promised to deliver 100% returns in 100 days. WCM777 turned out be a Ponzi scheme, and Plaintiffs lost their money. Rather than sue WCM777 or anyone else they had contact with, Plaintiffs have sued two banks that are strangers to them: The Hongkong and Shanghai Banking Corporation Limited ("HBAP"), the Hong Kong bank at which WCM777 held accounts in Hong Kong; and HSBC Bank USA, N.A. ("HSBC USA"), a domestic intermediary bank through which Plaintiffs' funds ostensibly traveled en route to Hong Kong.

Plaintiffs' misguided theory of liability is that HBAP and HSBC USA ("Defendants"), by performing ordinary banking functions, aided and abetted WCM777's wrongful conduct and are therefore liable for WCM777's alleged fraud, conversion, breach of fiduciary duty, and racketeering. Tellingly, Plaintiffs' counsel, Julio J. Ramos of the Law Offices of Julio J. Ramos and Steven M. Nuñez of Ward & Hagen, LLP, tried this theory already in California and it failed. Using three other California residents as plaintiffs, Plaintiffs' counsel filed this action against the same defendants on the same theory in the Central District of California in 2015. The district court there, the Honorable Otis D. Wright, II, granted summary judgment, denied class certification, and dismissed HBAP for lack of personal jurisdiction.

Openly forum shopping, Plaintiffs' counsel now appear in this Court with two more California residents, angling for an unjust and unwarranted second bite at the apple. Like the California court, this Court also should decline to assert personal jurisdiction over HBAP, a Hong Kong bank located in Hong Kong that transacts no business in New York; that has no employees, customer accounts, records, or property in New York; and that directs no advertising

132243624

to New York. HBAP's only connection to New York is having correspondent bank accounts there—but those accounts cannot be used by HBAP's customers and instead exist only to passively facilitate bank-to-bank wire transfers. Merely having a correspondent account does not subject a foreign bank with no operations in New York or the United States to personal jurisdiction.

For personal jurisdiction, Plaintiffs must identify claim-related conduct initiated by HBAP that was directed at New York, and there is none. Instead, in this case, the case-related conduct was Plaintiffs, acting in California, directing their conduct (sending wires to invest in WCM777) toward Hong Kong. For purposes of personal jurisdiction, that conduct was initiated by the wrong party and traveled in the wrong direction. Plaintiffs decided to make the payments to WCM777 that allegedly injured them, not HBAP. Plaintiffs decided to use wire transfers rather than some other form of payment, not HBAP. Plaintiffs decided to send their payments to WCM777 in United States dollars, not HBAP. And Plaintiffs (or their banks) had the power to dictate the bank-to-bank route their wire transfers would take on the way to Hong Kong, not HBAP. Those were decisions by or within the control of the *senders* of the wires (Plaintiffs) not the receiving bank (HBAP). And they were directed at Hong Kong, not New York.

The sheer absence of purposeful, claim-related conduct by HBAP (rather than by Plaintiffs or someone else) directed at the forum means the Court does not have personal jurisdiction over HBAP in this case. The minimum contacts required for personal jurisdiction under New York's long-arm statute and the United States Constitution are missing, and RICO's jurisdictional provisions do not apply to a foreign defendant served abroad, as HBAP was here.

Last but not least, asserting jurisdiction over HBAP would violate the Constitution because it is unreasonable. Every reasonableness factor weighs heavily against asserting

jurisdiction, which is exactly what one would expect where HBAP already had to defend Plaintiffs' counsel's attempt to assert jurisdiction over it in California on identical claims; where Plaintiffs are California citizens with no apparent connection to New York; where the burden on HBAP to defend itself in a foreign country where it does no business is severe; and where Hong Kong has a far greater interest in the disposition of these claims than New York. Forcing Hong Kong-based HBAP to relitigate jurisdiction when Plaintiffs had all relevant jurisdictional facts two years ago is manifestly unfair and constitutionally unreasonable.

HBAP is not and should not be a party to this litigation. Respectfully, the Court should grant HBAP's motion to dismiss for lack of personal jurisdiction with prejudice.

## II.     FACTUAL BACKGROUND.

### A.      Plaintiffs Are California Residents Who Were Duped in California by WCM777, a Non-Party with Offices in California and Whose Principal Is a California Resident.

Plaintiffs are California residents. (Compl. ¶¶ 3, 22–23.) WCM777 was a collection of companies with offices in California, controlled by Phil Ming Xu, a California resident. (*Id.* ¶¶ 3, 34.) WCM777 engaged in an internet scheme that solicited investors by promising a 100% return on investment in 100 days. (*Id.* ¶¶ 31, 36.) Plaintiffs transferred money by wires from their banks in California into WCM777's bank accounts at HBAP in Hong Kong. (*Id.* ¶¶ 1, 99, 100.) They seek to represent an international class of 5,000 people and entities in multiple states and foreign countries who invested in the scheme too. (*Id.* ¶¶ 2, 23, 98.) Plaintiffs did not sue those who took their money, but instead sued Defendants, two banks with which they have no relationship. Plaintiffs allege claims against Defendants for: (1) violation of RICO; (2) aiding and abetting fraud; (3) aiding and abetting breach of fiduciary duty; and (4) aiding and abetting conversion. (*Id.* ¶¶ 107–142.)

**B.    HBAP Is a Hong Kong Banking Institution with No Connection to New York Except for Correspondent Accounts.**

HBAP is an unlisted company incorporated in the Hong Kong Special Administrative Region of the People's Republic of China. (Declaration of Yiu Yuen Shan Susan ("Yiu Decl.") ¶ 2.) HBAP is headquartered in Hong Kong. (*Id.*) It is separate and independent from HSBC USA. (*Id.* ¶ 19.) HBAP has no branches, no employees, and no property (owned or leased) in New York or the United States. (*Id.* ¶¶ 6–9.) It does not advertise or solicit business in New York or the United States. (*Id.* ¶¶ 10–11.) It is not qualified to transact business in any state within the United States. (*Id.* ¶ 12.) HBAP focuses its business on customers doing business in Asia-Pacific, not New York or the United States. (*Id.* ¶ 18.) All HBAP customer accounts (and the funds deposited in them) are maintained and serviced outside the United States. (*Id.* ¶¶ 4–5.) All of HBAP's personnel, core operating systems, and records are located outside of the United States. (*Id.* ¶ 21.)

HBAP maintains a correspondent bank account in New York at HSBC USA and a back-up correspondent bank account in New York at Bank of America. (Yiu Decl. ¶ 13.) Those correspondent accounts exist only to passively facilitate bank-to-bank funds transfers from other banks to HBAP. (*Id.*) HBAP customers do not have access to HBAP's correspondent accounts. (*Id.*) Neither WCM777 nor any other HBAP customer could access either correspondent account. (*Id.*) The correspondent accounts cannot be used by HBAP customers to conduct ordinary banking activities. (*Id.*)

The bank-to-bank route taken by a funds transfer is determined by the originator (i.e., the sender) of the wire, or an earlier bank in the chain, not the beneficiary bank. (*See* Declaration of George Rajah ("Rajah Decl.") ¶¶ 3–5.) The beneficiary's bank has no control over and cannot dictate the bank-to-bank route that a wire transfer will take. (*Id.* ¶ 5.) Thus, HBAP as the

4

beneficiary bank had no control over the route taken by Plaintiffs' wire transfers to HBAP. (*Id.* ¶ 6.)

A wire transfer from the United States to an account at HBAP in Hong Kong does not have to travel through HBAP's correspondent account at HSBC USA. (Yiu Decl. ¶ 16.) HBAP can receive U.S. dollar deposits in Hong Kong from banks other than HSBC USA, including Citibank, JPMorgan Chase Bank, and Bank of America in Hong Kong. (*Id.* ¶ 15.) Thus, anyone in the United States could send wires to accounts at HBAP in Hong Kong without using HBAP's correspondent account at HSBC USA. (*See* Yiu Decl. ¶ 15–16; Rajah Decl. ¶¶ 3–5.) Indeed, that is what happened with the three named plaintiffs in the California Action and the eight other putative class members identified by Plaintiffs' counsel in that case—*none* of their wires to WCM777 in Hong Kong ever went through any account at HSBC USA. (Declaration of Gregory S. Korman ("Korman Decl.") ¶ 31, Ex. P ¶¶ 12–15.)[1]

### C.    Plaintiffs' Conclusory Allegations of HBAP's Activities.

Plaintiffs allege that this Court has personal jurisdiction over HBAP and HSBC USA, without distinguishing between them, "because certain of them have business operations in this state, while others have sufficient minimum contacts with the state, and otherwise intentionally avail themselves of the markets of this state so as to render this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice." (Compl. ¶ 21.)

---

[1]    *See also Giron v. Hong Kong & Shanghai Bank Co., Ltd.*, No. 15-8869, 2017 WL 5495504, at *10 (C.D. Cal. Nov. 15, 2017) ("Plaintiffs do not submit any evidence that HSBC USA was the only bank funding WCM777's fraudulent enterprise. In fact, it is the exact opposite. Every named plaintiff wired money to WCM777 from their own separate bank accounts, not HSBC USA. HSBC USA provides evidence that none of the named plaintiffs wire transfers to WCM777's Hong Kong account went through HSBC USA.") (internal citations omitted).

### i.     Plaintiffs allege conduct by HBAP in Hong Kong.

Plaintiffs allege for their aiding and abetting claims that HBAP allegedly: (1) knew that WCM777 was engaging in fraud; (2) provided accounts to WCM777 in Hong Kong "into which investors' money could be wire transferred"; (3) commingled funds between the WCM777 accounts in Hong Kong; and (4) refused in Hong Kong to cooperate with an order issued by a court in California in the receivership action against WCM777, *S.E.C. v. World Capital Market Inc.*, United States District Court for the Central District of California, Case No. 14-2334. (Compl. ¶¶ 121, 127, 129, 131, 137, 139; *see also id.* ¶¶ 1–4, 24, 67, 68, 70, 71, 73, 74, 77–81, 84, 101 (allegations regarding HBAP's knowledge); ¶¶ 65, 75, 87–89 (allegations regarding HBAP providing the accounts); ¶¶ 2, 16, 35, 92, 93, 95 (allegations regarding court order).)

HBAP has no operations in New York or anywhere else in the United States. Thus, the case-related conduct of which Plaintiffs complain—the things that HBAP knew or did not know, or that HBAP did or did not do—did not occur in New York and did not occur in the United States.

### ii.     Plaintiffs allege that HBAP has a correspondent account in New York.

Plaintiffs' only allegation relating to New York is that HBAP had a correspondent bank account at HSBC USA, which has its headquarters in New York. (Compl. ¶¶ 1, 6, 16, 49, 50, 53.) Neither Plaintiffs nor WCM777 are customers of or have accounts at HSBC USA. (Declaration of Nicole Annunziata ¶¶ 3–4.) Yet Plaintiffs' wires from California to Hong Kong apparently went through this correspondent account on their way to WCM777 in Hong Kong. (*Id.* ¶¶ 16, 99 (Vasquez transferred $100,000 on October 21, 2013), 100 (Garcia transferred $2,000 on October 11, 2013, and $2,000 on October 15, 2013).)

### iii.     Plaintiffs identify no relevant conduct elsewhere in the United States.

For their RICO claim, Plaintiffs allege that HBAP: (1) received money wired to

WCM777 accounts in Hong Kong; (2) commingled funds among WCM777 accounts in Hong Kong; and (3) wired funds from Hong Kong to the United States (but to no state in particular) to other WCM777 accounts or Global Payouts Inc.—for this latter allegation, Plaintiffs do not allege how or even whether Global Payouts has any connection to them or their claims. (Compl. ¶ 13, 113.) Plaintiffs also allege that purported "HSBC" employees were "in constant interstate email and telephone communications with Ying Leung[,] WCM777's Chief Financial Officer in California to coordinate the flow and volume of transactions and to verify the payment of funds when payments were late or missing." (*Id.* ¶ 8.)

      **D.**    **Plaintiffs' Counsel's First Attempt to Prosecute This Case Failed.**

This is the second attempt by Plaintiffs' counsel Ramos and Nuñez to force HBAP to litigate in this country notwithstanding that HBAP is not subject to personal jurisdiction here. Despite the fact that they, like all their clients, live in California, they have traveled here to seek the same relief from this Court that Judge Wright, the district judge in California, denied already.

      *i.*    ***The California Plaintiffs sued Defendants in California.***

On November 16, 2015, plaintiffs Ramiro Giron, Nicolas J. Herrera, and Orlando Antonio Mendez (the "California Plaintiffs") filed a putative class action complaint against Defendants in federal court in California (the "California Action"). (Korman Decl. ¶ 3, Ex. B.) The California Plaintiffs were represented by the same counsel and brought the same claims— aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and violation of RICO— plus claims for aiding and abetting an endless chain scheme and violation of California's unfair competition law, all arising from the WCM777 scheme. (*Id.*) The class they proposed included Plaintiffs. (*Id.* ¶ 79.)

###### ii. *The court in the California Action ruled that HBAP was not subject to personal jurisdiction.*

On March 9, 2016, HBAP moved to dismiss the California Action for lack of personal jurisdiction. (Korman Decl. ¶ 6, Ex. D.) The California Plaintiffs avoided a ruling by amending their complaint after the motion was fully briefed. (Korman Decl. ¶¶ 8–11.) HBAP moved to dismiss the then third amended complaint, which no longer included the RICO claim,[2] for lack of personal jurisdiction. (*Id.* ¶ 12, Ex. G.) On October 28, 2016, the court granted HBAP's motion to dismiss with prejudice. (Korman Decl. ¶ 16, Ex. J.) The court ruled that the California Plaintiffs' allegations against HBAP "only reflect passive activities." (Korman Decl., Ex. J at 5.) The conduct attributed to HBAP—"maintaining deposit accounts in a foreign country and accepting deposits in that country"—took place in Hong Kong and was not "directed to any other nation or jurisdiction." (*Id.* (citing *Pico v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).) Moreover, the correspondent account relationship between HBAP and HSBC USA lacked the requisite "strong nexus" to the claims asserted. (*Id.* (citing *Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth*, 500 F. Supp. 565, 569 (C.D. Cal. 1980).)[3]

###### iii. *The California Plaintiffs tried to re-add HBAP in apparent bad faith.*

Despite the Court having dismissed HBAP already, Plaintiffs' counsel moved to file a fifth complaint, in which they tried to re-include HBAP as a defendant. (Korman Decl. ¶ 17.) On January 31, 2017, the court denied that motion, noting that the California Plaintiffs displayed "apparent bad faith" by persisting with trying to sue HBAP when the court already ruled it did

---

[2]    The court dismissed the California Plaintiffs' RICO claim with prejudice at the pleading stage. (Korman Decl. ¶ 8); *Giron v. Hong Kong & Shanghai Bank Co., Ltd.*, No. 15-8869, 2016 WL 6662726, at *5–6 (C.D. Cal. June 29, 2016).

[3]    The California Plaintiffs' allegations that HBAP websites were hosted on computer servers in California were "similarly attenuated" and did "not suggest a strong nexus between the fraudsters' deposits and [HBAP's] actions." (Korman Decl., Ex. J at 5.)

not have personal jurisdiction over HBAP. (Korman Decl. ¶ 18, Ex. K at 5–6.)

### iv.   *The court granted summary judgment and denied class certification.*

On November 15, 2017, the district court granted remaining defendant HSBC USA's motion for summary judgment and denied the California Plaintiffs' motion for class certification. *See Giron*, 2017 WL 5495504 at *16. The California Plaintiffs had failed to create a triable issue of fact on causation because they "wired money to WCM777's account at [HBAP] through their own separate bank accounts, not HSBC USA" and none of their wire transfers "went through HSBC USA." *Id.* at *10. The court denied class certification on the ground that the California Plaintiffs failed to establish typicality and adequacy, nothing that other reasons existed to deny certification as well. *Id.* at *13–15.

The court also denied the California Plaintiffs' last-minute request to substitute in new class representatives because: (1) the court previously granted the California Plaintiffs' "several extensions" to move for class certification; (2) the California Plaintiffs "had significant time to conduct discovery, and to identify plaintiffs" that would be typical and adequate; (3) HSBC USA raised the typicality issue "early in the case"; (4) the California Plaintiffs asked for substitution only after they were challenged in opposition to their motion for class certification; and (5) the parties would need to take discovery for any new plaintiffs, which was "unacceptable given the [c]ourt's prior extensions." *Id.* at *15.[4]

### v.   *Plaintiffs' counsel voluntarily dismissed the California Action appeal.*

On December 13, 2017, the California Plaintiffs appealed to the Ninth Circuit. (Korman Decl. ¶ 22, Ex. L.) Several months later, Plaintiffs' counsel filed this action. (Dkt. 1.) After

---

[4]      This case is a transparent end-run around many of the rulings made in the California Action, but this one in particular. *See Giron*, 2017 WL 5495504 at *12 (noting that "Plaintiffs wish they had prosecuted this action differently").

getting an extension, Plaintiffs' counsel dismissed their appeal just before their opening brief was due. (Korman Decl. ¶ 29, Ex. O.) Plaintiffs' counsel declaration stated: "I came to realize that Appellants could not afford to pursue both this appeal and a related action in which I represent them and other putative class members in New York federal court." (*Id.*)

## III.   LEGAL STANDARD

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists," *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013), "with respect to each claim asserted," *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). "In determining whether a plaintiff has met this burden, [the court] will not draw argumentative inferences in the plaintiff's favor," nor will it "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993); *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) ("the Court need not accept as true allegations controverted by the defendant's affidavits").

The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* "Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective," which are enumerated in Fed. R. Civ. P. 4(k). *Id.*

"Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 60.

## IV.   THE COURT LACKS PERSONAL JURISDICTION OVER HBAP UNDER NEW YORK'S LONG-ARM STATUTE AND THE UNITED STATES CONSTITUTION.

Jurisdiction may be general or specific, *Licci*, 673 F.3d at 59 n.9, and over HBAP there is neither. HBAP is not subject to personal jurisdiction for any claims under New York's long-arm statutes or the Due Process Clause of the United States Constitution.[5]

### A.   The Court Does Not Have General Jurisdiction over HBAP.

The U.S. Constitution permits a court to assert "general jurisdiction over foreign … corporations … [only] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014). Except in rare cases, which this is not, a foreign corporation "may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). HBAP is not "at home" in New York because it is not incorporated there, does not maintain its principal place of business there, and no exceptional circumstances

---

[5]   Plaintiffs' RICO claim is analyzed the same way as their state law claims—it must also meet New York's long-arm statute and the Constitution's requirements—because the jurisdictional provisions of RICO do not apply to foreign defendants served abroad, as HBAP was served in this case. *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015). Further, RICO cannot be used as a basis for personal jurisdiction because the claim is subject to dismissal, as the California federal court already held and as set forth in the concurrently filed 12(b)(6) motion to dismiss. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) ("However, the Court needs not reach this question, because Plaintiffs 'cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants' if the RICO claim is dismissed."); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-7801, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012) (Engelmayer, J.) (finding no personal jurisdiction where jurisdiction was "solely based on the RICO statute" and "plaintiffs' RICO claims have been dismissed").

exist. *See Brown*, 814 F.2d at 627; *In re Terrorist Attacks*, 714 F.3d at 680 ("the alleged use of correspondent bank accounts" is "insufficient to support the exercise of general personal jurisdiction"); (Yiu Decl. ¶ 2; Compl. ¶ 24.) The Court therefore does not have general personal jurisdiction over HBAP.[6]

### B.     The Court Does Not Have Specific Personal Jurisdiction over HBAP.

#### i.      New York's long-arm statute does not authorize specific jurisdiction over HBAP.

A New York court may assert specific jurisdiction over a defendant only if the requirements of its long-arm statute are met. *See Licci*, 673 F.3d at 59–60; *see also Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (applies to diversity and federal question cases). Applicable here, New York's long-arm statute allows specific jurisdiction when: (1) a defendant transacts business in New York; and (2) the cause of action arises from such a business transaction. *Licci*, 673 F.3d at 60 (citing N.Y. C.P.L.R. § 302(a) & *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). Neither statutory element is met.[7]

---

[6]     Because the general jurisdiction analysis under the U.S. Constitution is more "restrictive," *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-3793, 2017 WL 4877426, at *4 (S.D.N.Y. Oct. 27, 2017) (Engelmayer, J.), "[t]here is no need to address the scope of general jurisdiction under New York law because the exercise of general jurisdiction over [HBAP] is clearly inconsistent with *Daimler*," *Sonera Holding B.V. v. Cukrova Holding A.S.*, 750 F.3d 221, 224 n.2 (2d Cir. 2014) (recognizing tension between *Daimler*'s "at home" requirement and New York's "doing business" test); *Doe v. Nat'l Conference of Bar Examiners*, No. 16-264, 2017 WL 74715, at *5 n.8 (E.D.N.Y. Jan. 6, 2017) (same).

[7]     New York's long-arm statute also permits specific jurisdiction for causes of action arising from the defendant's "tortious act within the state" or tortious act outside the state "causing injury to person or property within the state." N.Y. C.P.L.R. § 302(a)(2)–(3). Neither applies. First, section 302(a)(2) requires the defendant to "commit the tort while he or she is physically in New York State." *Bensusan*, 126 F.3d at 29 (no jurisdiction where acts performed by persons physically present in Missouri); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) (defendant's transmission of a fraudulent opinion to banks in New York did not meet requirement of physical presence in New York). Plaintiffs do not allege that any HBAP personnel were physically present in New York or that these personnel committed a tortious act in New York, nor can they as HBAP does not have any personnel in New York. (*See*

### 1)    HBAP does not transact business in New York.

"To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels*, 171 F.3d at 787. The "overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within" New York. *Enrenfeld v. Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007) (internal quotation marks omitted). "Purposeful availment occurs when the non-domiciliary, through volitional acts, seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (summary order) (internal quotation marks and alterations omitted). "At a minimum, the defendant must, on [its] own initiative … project [itself] into the state to engage in a sustained and substantial transaction of business." *Id.* (internal quotation marks and alterations omitted).

HBAP has not done that. Far from projecting itself into New York, HBAP has no branches, property, employees, records, or customer accounts in New York. (Yiu Decl. ¶¶ 3–9, 21.) It does not advertise or solicit business in New York, let alone in a "sustained and substantial" way, instead focusing its business on customers doing business in Asia-Pacific, on the other side of the world. (*See id.* ¶¶ 10–11, 18; *Hau Yin To*, 700 F. App'x at 67. And while HBAP's only connection to New York is having correspondent bank accounts, the "mere maintenance of correspondent bank accounts at an affiliate bank in New York" is not the transaction of business. *See Hau Yin To*, 700 F. App'x at 67. The flow of money through that

---

Yiu Decl. ¶ 7.) Second, section 302(a)(3) is inapplicable because Plaintiffs do not allege that they were injured in New York, nor can they as they are California residents allegedly defrauded in California. (*See* Compl. ¶¶ 22–23); *de Ganay v. de Ganay*, No. 11-6490, 2012 WL 6097693, at *6 (S.D.N.Y. Dec. 6, 2012) (situs of plaintiff's injury was "place of original reliance").

correspondent account qualifies as a transaction of business only if the *defendant's* use of the account was "purposeful." *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).[8]

Whether or not the use of the correspondent account meets the purposefulness test is a "fact-intensive inquiry" for the Court, *see Licci*, 732 F.3d at 168; *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 899–900 (N.Y. 2012) (inquiry "requires examination of the particular facts in each case" and "may be complicated by the nature of interbank activity, especially given the widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to the New York, or indeed the United States"), but it must at minimum involve some sort of *deliberate action* by the *defendant* directed at New York. For example, in *Licci*, the defendant foreign bank took deliberate action when it directed the routing of wires from overseas to its New York correspondent account, even though it could have routed them elsewhere, presumably because it was cheaper and easier for the foreign bank to do so. *See Licci*, 732 F.3d at 168; *Licci*, 984

---

[8]     The other alleged actions attributed to HBAP in the Complaint are not contacts with New York and are therefore irrelevant to the New York long-arm statute analysis. *See Licci*, 673 F.3d at 60 (citing N.Y. C.P.L.R. § 302(a)). The alleged email and telephone calls by "HSBC employees" were directed to California, not New York. (*See* Compl. ¶ 8.) Plaintiffs do not specify to what state the alleged transfers of money to California-based "Global Payouts Inc. at an account it held with Bank of America" or to WCM777 entities went. (*See* Compl. ¶¶ 13, 113.) These conclusory allegations—which appear to relate to alleged contacts in California—are insufficient to make a prima facie showing of jurisdiction. *See Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 332–33 (S.D.N.Y. 2013) ("courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state"). Even if these transfers were to New York, they would not be sufficient to establish transaction of business in New York. *See Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (transfer of "funds to and from [Bernie Madoff investment securities] located in New York" by foreign banks, custodians of feeder funds, was not the transaction of business under section 302(a)); *Cont'l Field Serv. Corp. v. ITEC Int'l, Inc.*, 894 F. Supp. 151, 154 (S.D.N.Y. 1995) (defendant's wiring of funds at the request of another "does not establish the requisite purposeful activity").

N.E.2d at 901 ("While it may be that [bank] could have routed the dollar transactions on behalf of [customer] elsewhere, the fact that [bank] used a New York account 'dozens' of times indicates desirability and a lack of coincidence"). In *Arcapita*, the defendant foreign bank acted deliberately when it set the terms of each transaction, selected U.S. dollars as the currency, and designated a New York correspondent bank account to receive funds from the debtor bank. *See Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. (c) v. Bahrain Islamic Bank*, 549 B.R. 56, 68–69 (S.D.N.Y. 2016). In *Rushaid*, the foreign bank and its personnel acted deliberately when they designed and orchestrated the complained-of bribery and kickback scheme and, when other jurisdictions were available, chose New York as the location to receive deposits that it then distributed to its foreign customer's corrupt employees. *See Rushaid v. Pictect & Cie*, 68 N.E.3d 1, 5 & 11 (N.Y. 2016) (The "vendors' choice to deposit money in New York was precisely part of defendants' design" to launder money).

In all of these cases, the foreign bank affirmatively, deliberately, and purposefully directed its case-related conduct—the conduct alleged to be injury-producing—at New York. Put differently, the actions that the foreign banks aimed deliberately at the forum had a strong nexus to the misconduct alleged by the plaintiffs. Here, in contrast, HBAP aimed no case-related conduct at New York. HBAP did not direct the routing of Plaintiffs' wires; Plaintiffs did that. HBAP did not select the currency for the transactions; Plaintiffs did that. HBAP did not decide to wire money to Hong Kong; Plaintiffs did that. No one purposefully directed any case-related activity at New York, but if anyone did, it was Plaintiffs, who routed their wires through HSBC USA, rather than routing them through some other bank, as the plaintiffs in the California Action did. Of course, even if Plaintiffs' conduct could be characterized as purposefully directed at New York (rather than Hong Kong), personal jurisdiction over HBAP cannot be based on what

Plaintiffs did, but only what HBAP did. And HBAP did nothing but passively receive funds, in and out of a correspondent account, which is not purposeful and does not confer jurisdiction. *See Hau Yin To v. HSBC Holdings PLC*, No. 15-3590, 2017 WL 816136, at *7 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).

In *Hau Yin To*, for example, the district court did not have jurisdiction over the foreign banks that served as administrators and custodians of the feeder funds that allegedly funneled money into Bernie Madoff's Ponzi scheme. As here, the defendants' transfer of funds into and out of New York bank accounts was "passive," "merely incidental," and "not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme." *Id.* at *7 n.6 (distinguishing scheme in *Rushaid*); *see also id.* at *6 (transfers were "incidental consequences of fulfilling a foreign contract"); *Hau Yin To*, 700 F. App'x at 67–68. In *Stanbic*, the use of the foreign bank's correspondent account during a wire transfer initiated by a non-customer in Minnesota was "not even [the bank's] doing." *See Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd*., No. 14-5216, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (granting bank's motion to dismiss).

This case is like *Hau Yin To* and *Stanbic*. The passage of Plaintiffs' wire transfers through HBAP's correspondent account was passive, fleeting, nominal, and *instigated by Plaintiffs*. It was Plaintiffs and their banks, not HBAP, who decided *whether* to send the wires, *in what currency* to send the wires, and *through which banks* to send the wires. (*See* Yiu Decl. ¶ 15–16; Rajah Decl. ¶¶ 5–6.) HBAP did not wire foreign funds through New York for its customer like the bank in *Licci* or orchestrate use of the correspondent account like the banks in *Arcapita* or *Rushaid*. In fact, HBAP engaged in no volitional acts concerning the correspondent account—indeed, HBAP's correspondent account cannot be used for any purpose other than passively facilitating bank-to-bank wire transfers. (*See* Yiu Decl. ¶ 13.) Like in *Stanbic*, the wires

were not even the bank's doing. *Stanbic*, 2015 WL 4164763, at *4. HBAP just received those wire transfers—initiated by non-customers in California, routed per the wire instructions of those non-customers in California—in Hong Kong. Consequently, HBAP engaged in no conduct sufficient to amount to the transaction of business in New York.

**2)   Plaintiffs' claims do not arise from the fact that their wires went through New York.**

A claim arises from a transaction where "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246; *see also Licci*, 984 N.Ed.2d at 900. The inquiry "focuses on the defendant's conduct." *Licci*, 984 N.E.2d at 901. The arising-from test is not met here because Plaintiffs' aiding and abetting claims against HBAP do not arise from the fact that their wires went through a correspondent account at an intermediary bank in New York on their way to Hong Kong. Instead, wires going through the correspondent bank account at HSBC USA is the basis for their claims *against* HSBC USA, the *other* defendant. (*See* Compl. ¶¶ 122, 132, 140 ("HSBC USA substantially assisted and aided and abetted WCM777 by serving a[s] the intermediary bank by which investors' money could be wire transferred to WCM777 accounts in Hong Kong"); *see also id.* ¶ 6 ("HSBC USA provided continued access to the global Financial System for WCM777").) [9]

Plaintiffs' claims against HBAP, in contrast, are based on the theory that HBAP provided WCM777 with access to bank accounts *outside* the U.S., *in Hong Kong*, beyond the reach of U.S. regulators, where WCM777 could receive investor money. (*See* Compl. ¶¶ 121, 131, 139

---

[9]     To say that the funds ever physically went to New York is a fiction in any event. Wire transfers are only ever *figuratively* in possession of the intermediary bank. *Receivers of Sabena S.A. v. Deutsche Bank A.G.*, 142 A.D.3d 242, 244 & 244 n.1 (N.Y. App. Div. 2016) ("while contrary to the intuitive assumption that funds are transferred from bank to bank, there is no actual tangible property being passed on down the line").

(HBAP "substantially assisted and aided and abetted WCM777 by providing accounts into which investors' money could be wire transferred to …").) *That* is the relevant conduct for analyzing personal jurisdiction, and it has nothing to do with New York. The fact that Plaintiffs' funds figuratively went through a correspondent account at HSBC USA on their way to their destination in Hong Kong is not substantially, materially, or closely related to Plaintiffs' claims against *HBAP*. Personal jurisdiction hinges on the existence of a close nexus between HBAP's alleged wrongdoing and New York, and no such nexus exists here.[10]

Plaintiffs' aiding and abetting tort claims depend on intentional conduct. The only forum-related intentional conduct alleged here is conduct *by Plaintiffs*, who wired their funds to Hong Kong, and whose funds figuratively passed through New York along the way. This is not purposeful conduct in New York by *HBAP* and Plaintiffs' claims do not arise from anything *HBAP* did in New York. Thus, Plaintiffs' allegations do not demonstrate the intentional conduct necessary to support specific personal jurisdiction under the long-arm statute. *Compare Licci*, 984 N.E.2d at 901 (bank "deliberately used a New York account again and again to effect its support of [customer] and shared terrorist goals").

### ii.    *The Constitution does not authorize specific jurisdiction over HBAP.*

The exercise of jurisdiction over HBAP also does not comport with constitutional due process. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002). "[D]ue process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable under the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Wash.*,

---

[10]    Jurisdiction over HBAP cannot be based on HSBC USA's contacts with New York because "[e]ach defendant's contacts with the forum State must be assessed individually." *See Calder v. Jones*, 466 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Only HBAP's contacts with the forum that give rise to Plaintiffs' claim matter. *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). The reasonableness inquiry "varies inversely with the strength of the 'minimum contacts' showing." *Bank Brussels*, 305 F.3d at 129. Neither the minimum contacts nor reasonableness requirement is met here.

### 1)   HBAP lacks Constitutional minimum contacts with New York.

To establish minimum contacts for due process purposes, the defendant must have purposefully directed its activities to the forum and the plaintiff's injuries must arise out of those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Where the defendant's contacts with the state are limited, jurisdiction may be appropriate "only if the plaintiff's injury was proximately caused by those contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). As discussed in connection with New York's long-arm statute, HBAP did not purposefully direct *any* activities to New York and Plaintiffs' injuries do not arise from *any* activities HBAP directed at New York. The passive act of money flowing through a bank in the forum that was instigated and controlled by Plaintiffs is not purposeful contact attributable to HBAP for purposes of personal jurisdiction. (*See* Korman Decl., Ex. J. at 5–6.)

### 2)   Plaintiffs' claims do not arise from the correspondent account.

Plaintiffs' claims against HBAP do not arise from the fact that their funds fictionally traveled through a passive correspondent bank account in New York en route to their destination in Hong Kong. That is the basis for their claims against the *other* defendant, HSBC USA. Plaintiffs' claims against HBAP have nothing to do with anything HBAP did *inside* the United State. On the contrary, Plaintiffs aspire to hold HBAP responsible for giving WCM777 a bank

*outside* the United States, into which Plaintiffs could "invest." The route taken by the wired investment funds on the way to Hong Kong is irrelevant. There were plenty of other routes to WCM777's Hong Kong accounts, and we know those routes were readily accessible to WCM777 investors. After all, all three named plaintiffs in the California Action, and the eight other "investors" that Plaintiffs' counsel identified in their initial disclosures, all sent money by wire to WCM777 in Hong Kong, and *none* of their wires went through HSBC USA. (*See* Korman Decl., Ex. P ¶¶ 12–15.)

On this record, and as the district judge in California ruled already, "the correspondent relationship between [HBAP] and HSBC USA lacks the requisite 'strong nexus' between the transaction in question and [HBAP's] activities." (*See* Korman Decl., Ex. J at 6 (citing *Trans-Continental Inv. Corp.*, 500 F. Supp. at 568–69 (Michigan bank's correspondent relationship with California bank insufficient to establish jurisdiction)); *see also SPV Osus Ltd.*, 882 F.3d at 344 (foreign bank's "handful of communications and transfers of funds" to New York as feeder funds to Madoff's Ponzi scheme were "too tenuous to support the exercise of jurisdiction"). Plaintiffs still could have invested in WCM777's alleged Ponzi scheme while bypassing HSBC USA altogether—just as did the eleven people Plaintiffs' counsel represented in the California Action—by, among other things, directing that another intermediary bank be used, sending money in a different currency, or sending funds by check or other instrument. Thus, the injury-producing conduct that Plaintiffs attribute to HBAP—giving WCM777 a place to bank in a foreign country—does not depend on and exists irrespective of a correspondent account in New York.

Plaintiffs' claims against HBAP do not arise out of the existence of the correspondent account in New York or any other activity with the forum. Consequently, HBAP lacks minimum

contacts with New York, and moreover, its claims do not arise from those contacts. Asserting specific personal jurisdiction over HBAP in this case would violate the Due Process Clause.

### C.    Exercising Personal Jurisdiction over HBAP Would Be Unreasonable.

The factors relevant to assessing whether the exercise of jurisdiction would comport with fair play and substantial justice include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in further substantive social policies. *Bank Brussels*, 305 F.3d at 129. Every factor compels the conclusion that asserting personal jurisdiction over HBAP is unreasonable.

*First Factor*: The exercise of jurisdiction over HBAP will impose a severe burden on HBAP. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987). HBAP's headquarters in Hong Kong is over 8,000 miles from New York, necessitates an approximate 16 hour flight to reach New York, and is 12 hours ahead of New York. (Yiu Decl. ¶ 21.) It is easy to say that technology "eases" these burdens, but that is cold comfort to the defendant litigating in a foreign country halfway around the world. The severe burden on HBAP should be taken very seriously. *See Asahi*, 480 U.S. at 114 (burden on Japanese corporation to defend lawsuit in California was "severe").

*Second Factor*: New York has no interest in adjudicating this case. Plaintiffs are not New York residents; therefore New York's "legitimate interests in the dispute have considerably diminished." *See Asahi*, 480 U.S. at 114. Moreover, the fraudulent transactions were committed

by WCM777 in California and the receivership proceedings against WCM777 are being pursued in California. And, of course, the California Plaintiffs litigated these same claims in the federal district court in California beginning in November 2015.

*Third Factor*: Plaintiffs have no interest in obtaining convenient and effective relief in New York. Plaintiffs are not citizens of New York, a "significant—and often dispositive— jurisdictional fact." *See Sherwin-Williams Co. v. Avisep, S.A. De C.V.*, No. 14-6227, 2016 WL 354898, at *6 (S.D.N.Y. Jan. 28, 2016) ("the presence of a New York plaintiff drastically impacts the reasonableness inquiry"); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (1996) (this factor "weighs heavily against" non-citizen plaintiff). They (and their counsel) reside in, store their documents in, were purportedly defrauded in, and made wire transfers from *California*—the state in which this lawsuit originally was filed. Based on the Complaint, Plaintiffs have no connection to New York whatsoever.

*Fourth Factor*: The interstate judicial system's interest in efficient resolution tips sharply against jurisdiction in New York. This is rank forum shopping. It is the height of inefficiency and a waste of judicial resources to re-litigate the same putative class action in New York right after the parties and the district court in California spent two years on discovery, litigated numerous dispositive motions and orders, entered judgments, and commenced and dismissed appellate proceedings. The only reason Plaintiffs filed this case here is to re-litigate the claims that failed in the California Action before a new court, which is forum shopping, and forum shopping is by definition unreasonable. *See Fisher v. Teva PFC, SRL*, No. 04-2780, 2005 WL 2009908, at *4 (D.N.J. Aug. 16, 2005) (exercise of jurisdiction over foreign defendant unreasonable in part because plaintiffs "lost on this very issue in Nevada" and "appear to be shopping for *any* forum within which to sue this particular foreign defendant").

22

Critically, no newly discovered information or other articulable good faith basis exists for bringing this action again here. Plaintiffs' counsel knew about HBAP's correspondent account from the inception of the California Action in November 2015 (Korman Decl. ¶ 3, Ex. B ¶ 35); knew the correspondent account was in New York by at least March 2016 (Korman Decl. ¶ 6, Ex. D at 4); used the account to argue that personal jurisdiction existed over HBAP *in California* when opposing HBAP's two motions to dismiss (Korman Decl. ¶ 7, Ex. E at 15; *id.* ¶ 14 Ex. H at 7); *never* argued that *New York* had jurisdiction because of the correspondent account; never requested that the case be transferred to New York; knew that the California Plaintiffs' wire transfers did not pass through the account "early in the case," *see Giron*, 2017 WL 5495504 at *15; and waited to file this action until one-and-a-half years after HBAP was dismissed for lack of personal jurisdiction.

*Fifth Factor*: Hong Kong's interest in efficiency and protecting and implementing its procedural and substantive social policies weighs against the exercise of jurisdiction. *See Asahi*, 480 U.S. at 113, 115; *Sherwin-Williams*, 2016 WL 354898 at *6. Hong Kong "unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents." *See Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003). Hong Kong's interests, "as well as the Federal interest in Government's foreign relations policies, will be best served by … an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *See Asahi*, 480 U.S. at 115. Asserting jurisdiction in New York undermines efficiency as HBAP has already defended the California court's denial of personal jurisdiction in California. Efficiency is also undermined by the age of Plaintiffs' claims, as Plaintiffs made their wire transfers to Hong Kong over five years ago. (*See* Compl. ¶¶ 99–100.)

As application of the relevant factors makes clear, exercise of personal jurisdiction over HBAP is constitutionally unreasonable in this case.

## V.     CONCLUSION

HBAP is a foreign bank with no relationship to Plaintiffs that is not subject to personal jurisdiction in this Court, just as it was not subject to personal jurisdiction in California. For the foregoing reasons, HBAP respectfully requests that this Court grant its motion to dismiss the Complaint against HBAP with prejudice.

Dated: New York, New York
       August 28, 2018                 KATTEN MUCHIN ROSENMAN LLP

                                By:  /s/  Gregory S. Korman
                                   Gregory S. Korman

                                   Stuart M. Richter (admitted *pro hac vice*)
                                   stuart.richter@kattenlaw.com
                                   Gregory S. Korman (admitted *pro hac vice*)
                                   greg.korman@kattenlaw.com
                                   2029 Century Park East, Suite 2600
                                   Los Angeles, California 90067
                                   Ph. (310) 788-4400
                                   Fax (310) 788-4471

                                   Craig A. Convissar
                                   craig.convissar@kattenlaw.com
                                   575 Madison Avenue
                                   New York, New York 10022
                                   Ph. (212) 940-8800
                                   Fax (212) 940-8776

                                   *Attorneys for Defendants The Hong Kong and Shanghai Banking Corporation Limited; and HSBC Bank USA, N.A.*