**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
RIGOBERTO VASQUEZ AND EVA GARCIA :
on behalf of themselves and all others similarly :
situated : Civil Action No. 1:18-cv-01876-PAE-BM
:
:
Plaintiffs, :
:
v. :
:
:
HONG KONG AND SHANGHAI :
BANKING CORPORATION LTD, a :
foreign company; HSBC BANK USA, N.A., :
a national banking association; and DOES 1 :
through 100, inclusive, :
:
Defendants. :
---------------------------------------------------------------X

**PLAINTIFFS' OPPOSITION TO DEFENDANT THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2)**

1

## I. INTRODUCTION

Under the New York's Long Arm Statue, "a foreign bank with a correspondent account … that repeatedly approves deposits and the movement of funds through that account for the benefit of its customer is no less transacting business in New York because the customer, or a third party at the customer's direction, actually deposits or transfers the funds to New York." *Rushaid v. Pictet & Cie*, 28 NY3d 316, 328.  In this case, HSBC Hong Kong maintains a correspondent account at HSBC USA in New York.  HSBC Hong Kong knew that its customer, WCM777, was running a Ponzi scheme and directing would be victims to wire transfer U.S. Dollars directly to its accounts at HSBC Hong Kong.   Nonetheless, HSBC Hong Kong cleared and approved thousands of deposits that ran through its correspondent bank account at HSBC USA in New York all while knowing that it was separating a victim from his or her money and delivering it to the fraudulent entity, WCM777.  Plaintiffs bring RICO claims as well as aiding and abetting claims for HSBC Hong Kong's use of its New York correspondent account to join in with and aid its fraudulent customer.

## II.   FACTS

1. **WCM777 Was Conducting a Ponzi Scheme Based on Cloud Computing Services, and Was Ultimately Shut Down By the SEC.**

On March 27, 2014, the SEC shut down WCM777 in Federal District Court because it was a Ponzi scheme. (First Amended Complaint "FAC ¶ 1.)  Through its website and social media pages WCM777 held itself out as the brainchild of World Capital Markets, Inc., which purported to be a global merchant investment bank.  (FAC ¶17.) WCM777 was described as an investment opportunity offering packages of cloud computer services that promised remarkable returns.  (FAC ¶ 17.)  However, WCM777 generated no revenue apart from the investments made by victims. (FAC ¶ 17.)  In October of 2013, after Massachusetts began investigating it, WCM777 turned to HSBC Hong Kong to help place its continued operation outside the reach of United States jurisdiction.  (FAC ¶ 14-15, 20.)  As it "shut down" operations in the United States, WCM777

2

explicitly stated on its website that it was shifting its operation to Hong Kong because it was not in compliance with U.S. law.  (FAC ¶20.)

2. **HSBC USA Told HSBC Hong Kong Early On That it Had Concluded WCM777 Was a Ponzi Scheme, But Each Nonetheless Continued To Process Thousands of Wire Transfers From Victims Worth Millions of Dollars.**

In July of 2013, the same month that WCM777 opened up its first bank account with HSBC Hong Kong, HSBC USA flagged a wire transfer as suspicious and began a manual investigation. (FAC ¶ 36.) In July of 2013, HSBC Hong Kong opened up a Business Vantage account, which allowed for a U.S. Dollar balance, for WCM777 Ltd, which had just been incorporated in Hong Kong.  (FAC ¶ 14, 26.)  HSBC Hong Kong knew that WCM777 was located in California and not Hong Kong.  (FAC ¶ 27.)  HSBC Hong Kong knew that WCM777 conducted its "commerce" over the internet.  (FAC ¶ 27.)  HSBC Hong Kong maintained a correspondent bank account with HSBC USA, which it utilized as part of its relationship with WCM777.  HSBC Hong Kong also interacted with WCM777 in California and HSBC USA in New York in order to deal with any problems that arose with the wire transfers that were passing through the correspondent bank account.  (FAC ¶ 29 & 38 ¶33, 34.)  As part of the manual review, HSBC USA simultaneously asked HSBC Hong Kong for more information regarding WCM777 and independently investigated it.  (FAC¶ 37 & 39.)  On September 30, 2013, HSBC USA discovered an extensive, seven-page review of the WCM777 investment opportunity by a multi-level marketing blogger that concluded WCM777 was a Ponzi scheme.  (FAC¶ 39.) HSBC USA independently reviewed the WCM777 website and also concluded that it was a Ponzi scheme:

> "internet research however shows that the BENE is alleged as a pyramid/Ponzi scheme (ample google results attached) … Review of the products posted on BENE website reasonably appeared that they are engaged in pyramid/ponzi scheme as they offer no concrete underlying products/services while offering guaranteed `daily' profit/returns by buying multi-level shares"

(FAC ¶ 40.)  On October 2, 2013, HSBC USA emailed its findings to HSBC Hong Kong.  Even so, both HSBC Hong Kong and HSBC USA processed thousands of U.S. Dollar wire transfers from victims to WCM777 in Hong Kong.  (FAC ¶44.)  In addition, HSBC Hong Kong, beginning

3

in October, 2013, made nearly 60 wire transfers of over $12 million U.S. Dollars from WCM777's accounts to the United States to a Bank of America account of Global Payouts, Inc., for it to distribute the money as fictitious profits to victims. (FAC ¶45.)  Bank of America, it turns out, is a second New York bank at which HSBC Hong Kong maintains a correspondent account.  See, Declaration of Yin Yuen Shan Susan.  HSBC Hong Kong even refused to freeze the WCM777 accounts when delivered the SEC order.  (FAC ¶ 46-47.)

While Defendant HSBC Hong Kong does submit three declarations in support of its motion, those employee declarations do not deny that HSBC Hong Kong used its correspondent bank account transfer U.S. Dollars through New York and to its customer WCM777, nor do those declarations deny that HSBC Hong Kong knew WCM777 was a Ponzi scheme when it processed those transfers through its HSBC USA correspondent account.  Instead, the declarations simply indicate that HSBC Hong Kong and WCM777 could have accomplished their aims of continuing the Ponzi scheme without utilizing either of the correspondent accounts in New York.  But those are not the facts.

### III.   ARGUMENT

1. **That HSBC Hong Kong Cleared Thousands Of Wire Transfers Made To Its New Your Correspondent Bank Account And Credited Its Customer WCM777's Accounts Is Sufficient To Confer Specific Personal Jurisdiction In New York.**

A New York court may assert specific jurisdiction over a defendant only if the requirements of its long-arm statute are met. *See Licci*, 673 F.3d at 59–60*; see also Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997) (applies to diversity and federal question cases). Relevant here, those requirements are (1) the defendant transacts business in New York; and (2) the cause of action arises from transaction of business in New York. *Licci,* 673 F.3d at 60 (citing N.Y. C.P.L.R. § 302(a) & *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007)) The New York Court of Appeals in *Rushaid v. Pictet & Cie,* specifically held that "a foreign bank with a correspondent account … that repeatedly approves deposits and the movement of funds through that account for the benefit of its customer is no less transacting business in New York because

4

the customer, or a third party at the customer's direction, actually deposits or transfers the funds to New York." 28 NY3d 316, 328.

The plaintiffs in *Rushaid*, *supra.*, alleged that some of its faithless employees, located in Saudi Arabia, had accepted bribes and kickbacks from vendors in exchange for paying inflated prices, and ignoring various deficiencies in the vendors' products and services. The plaintiffs sued a private bank located in Geneva, Switzerland, as well as its vice president, claiming that the bank defendants aided and abetted the employees' fraud, by knowingly laundering the money paid by the vendors through the bank's New York correspondent account with Citibank. The complaint alleged that the defendants were active participants in the scheme, having set up bank accounts for a bogus company to receive the bribes. The vendors – at the direction of the employees – wired the bribe money to the bank's New York correspondent account. The bank then credited the funds to the bogus offshore company's account in Geneva, where it was transferred to the various employee's individual accounts. The Court of Appeals explicitly rejected the argument that the bank merely passively received payments to its account at the direction of third parties: "Our cases do not require that the foreign bank itself direct the deposits, only that the bank affirmatively act on them." Therefore, the Court of Appeals "conclude[d] that defendants' intentional and repeated use of New York correspondent bank accounts to launder their customers' illegally obtained funds constitutes purposeful transaction of business substantially related to plaintiffs' claims, thus conferring personal jurisdiction within the meaning of CPLR 302(a)(1)." *Id.* at p. 328.

Plaintiffs in this case make similar allegations regarding HSBC Hong Kong's use of its correspondent account to service WCM777. Plaintiffs specifically allege that HSBC Hong Kong knew that WCM777 was conducting a Ponzi scheme. Plaintiffs also allege that HSBC Hong Kong knew that WCM777 was moving its main office from the United States to Hong Kong. Plaintiffs allege that HSBC Hong Kong knew that WCM777 was centered in the United States, but incorporated WCM777 Ltd just days before opening the HSBC Hong Kong accounts. Plaintiffs allege that WCM777 directed the would be victims to wire transfer money directly to HSBC Hong Kong. Plaintiffs allege that HSBC Hong Kong affirmatively acted on thousands of wire transfer from victims, including the named plaintiffs, by processing them to WCM777. Since, as HSBC

5

Hong Kong's declarations explain, there were other avenues to it in Hong Kong that did not involve its New York correspondent accounts, it could have rejected the wire transfers and directed that they be sent through those other channels. Instead, HSBC Hong Kong specifically responded to the HSBC USA inquiries about the first wire transfers in order to make sure that its correspondent bank account could be used. The role of HSBC Hong Kong is indistinguishable from the defendant bank in *Rushaid*, *supra.* Plaintiffs also allege that HSBC Hong Kong processed hundreds of wire transfers back to the United States to be utilized to pay fictitious profits. Finally, the complaint alleges that HSBC Hong Kong refused to freeze the WCM777 accounts when provided the SEC TRO.

Defendant's reliance on *Hau Yin To v. HSBC Holdings PLC,* 2017 U.S. App. LEXIS 21988 is misplaced. There were no allegations in that case that the Bank defendant was integral to Bernard Madoff's Ponzi scheme. Therefore, the court distinguished *Rushaid*, *supra.*, characterizing it as a case in which a foreign bank repeatedly used a correspondent bank account in New York as an integral part of a fraudulent scheme to wire criminal proceeds. *Id.*, at p. *3.

**2. HSBC Has Not Presented A Compelling Case For Rejecting Jurisdiction.**

This case concerns the same anti-money laundering procedures that are at issue in HSBC's Deferred Prosecution Agreement with the United States government. (FAC ¶ 30-32, Request for Judicial Notice, Exh. 1) As part of that agreement, HSBC agreed to have a Monitor report to the Eastern District of New York on HSBC and its worldwide affiliates' attempts to implement anti-money laundering policies and procedures. Part of the report concerns HSBC USA and HSBC Hong Kong and their interaction in the very type of international transactions at issue in this litigation. In fact, the Deferred Prosecution Agreement requires HSBC to notify the Department of Justice regarding any civil action related to its "compliance with U.S. sanction…laws, the HSBC Parties involvement in money laundering, or the HSBC Parties anti money laundering program. (DPA Pg. 11 ¶ 6J). HSBC Holdings plc agreed to ensure that its wholly-owned subsidiaries comply with the requirements of the Deferred Prosecution Agreement. (DPA Pg. 24 ¶ 24.)

The claims of severe burden on the self-proclaimed largest international bank and financial services company in the world. It was HSBC Hong Kong that utilizes, not one, but two New York

correspondent banking accounts that were apparently utilized in the thousands of victims wire transfers, and the hundreds of wire transfers to Global Payouts for inbound fictitious profits.

Plaintiffs interest in maintaining this lawsuit is obvious. They have no jurisdiction to bring the lawsuit in California.

### IV.  PLAINTIFFS REQUEST JURISDICTIONAL DISCOVERY.

If this Court is not inclined to deny the Motion, Plaintiffs seek leave to conduct jurisdictional discovery. Jurisdictional discovery is widely recognized as necessary and appropriate in the context of HSBC Hong Kong's 12(b)(2) Motion. Rule 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." Fed.R.Civ.P. 26(b)(1). Discovery is proper where issues arise as to jurisdiction or venue, such as those brought to issue by HSBC Hong Kong's 12(b)(2) Motion. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978) (". . . where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").

HSBC Hong Kong has submitted declarations that suggest that victim's wire transfers may have traveled through its other New York correspondent account at Bank of America. The declarations also suggest that victim transfer may have gone to it in Hong Kong without traveling through New York or even the United States in order to suggest that its use of the New York account was just happenstance. Plaintiffs would like the opportunity to conduct discovery on those two issues raised by the declarations.

///

///

///

## V.     CONCLUSION

Plaintiffs have made a *prima facie* showing that HSBC Hong Kong approved of and used its correspondent bank account at HSBC USA in New York in order to conduct this elaborate money laundering and Ponzi scheme with WCM777. Its interactions with HSBC USA regarding the wire transfers to that account demonstrate that it knew it was vital to the Ponzi scheme' attempt to continue abroad. It, thereafter, approved thousands of wire transfers for the account it managed, thereby subjecting it to jurisdiction in New York.

Dated: December 7, 2018

Respectfully Submitted,

By: /s/ Julio J. Ramos
Julio J. Ramos
LAW OFFICES OF JULIO J. RAMOS
35 Grove Street, Suite 107
San Francisco, California 94102
Telephone: (415) 948-3015
Facsimile:  (415) 469-9787

Steven M. Nuñez, Esq. (Pro Hac Vice Pending)
WARD & HAGEN, LLP
440 Stevens Avenue, Suite 350
Solana Beach, California 92075
Telephone: (858) 847-0505
Facsimile:  (858) 847-0105

MICHAEL E. ADAMS (Pro Hac Vice Pending)
LAW OFFICES OF MICHAEL E. ADAMS
2 702 Marshall Street, Suite 300
Redwood City, CA 94063
3 Telephone: (650) 599-9463
Fax: (650) 599-9785