UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x
                                                        :

RIGOBERTO VASQUEZ and EVA GARCIA on behalf of
themselves and all others similarly situated,
                                             :   1:18-CV-01876-PAE-BM

                           Plaintiffs,
                                                          :

               -against-
                                                         :

HONG KONG AND SHANGHAI BANKING CORPO-
RATION LTD., a foreign company; HSBC BANK USA,
N.A., a national banking association; and DOES 1 through
100, inclusive,
                                                   :

                        Defendants.
                                                          :

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**DEFENDANT THE HONGKONG AND SHANGHAI BANKING CORPORATION LIM-
ITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(b)(2)**

142000399

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................1

II.   Factual Background ......................................................................................3

    A.  Defendant HSBC Hong Kong Is a Hong Kong Bank with No Connection to New York Except for Two Correspondent Bank Accounts ..............................3

    B.  Plaintiffs Are California Residents Who Were Duped in California by a Company Operating in California Whose Principal Resided in California............4

    C.  Plaintiffs' Threadbare Allegations of Personal Jurisdiction ................................5

III.  Procedural Background...................................................................................6

    A.  This Is Plaintiffs' Counsel's Second Attempt to Prosecute This Case ..................6

        1.  The district court in the California Action ruled that HSBC Hong Kong was not subject to personal jurisdiction ..............................................6

        2.  In the California Action summary judgment is granted, class certification is denied, and Plaintiffs' counsel abandon their appeal..........7

    B.  This Court Dismisses HSBC USA and Orders Jurisdictional Discovery..............8

IV.   Legal Standard ............................................................................................9

V.    The Court Lacks Specific Personal Jurisdiction over HSBC Hong Kong........................10

    A.  Specific Jurisdiction over HSBC Hong Kong Is Not Authorized under the State Long-Arm Statute ................................................................................10

        1.  The first requirement for statutory jurisdiction is not met because HSBC Hong Kong did not transact business in New York .....................10

            a.  Having a correspondent account is not the transaction of business ......................................................................................11

            b.  The other potential New York contacts—emails and other people's wires—do not establish the transaction of business........14

        2.  The second requirement for statutory jurisdiction is not met because Plaintiffs' claims against HSBC Hong Kong do not arise from wires going through New York....................................................15

142000399

a.    The correspondent account was the basis for claimed liability against HSBC USA, but is irrelevant to liability against HSBC Hong Kong ............................................................15

b.    HSBC Hong Kong's use of the correspondent account is not substantially related to Plaintiffs' claims ...............................16

B.    Specific Jurisdiction over HSBC Hong Kong Is Not Authorized under the U.S. Constitution ..................................................................................................19

1.    HSBC Hong Kong lacks constitutional minimum contacts with New York ............................................................................................19

a.    HSBC Hong Kong did not purposefully direct itself to New York. ............................................................................................19

b.    There is no causal link between HSBC Hong Kong's forum contacts and Plaintiffs' alleged injuries .........................................20

c.    Plaintiffs' claims do not arise from non-Plaintiff wire transfers .................................................................................................21

2.    Exercising personal jurisdiction over HSBC Hong Kong is unreasonable .................................................................................................22

VI.    Conclusion ...............................................................................................................25

142000399

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Tr. v. UBS AG,*
    78 F. Supp. 3d 977 (N.D. Cal. 2015) ......................................................................9

*Amigo Foods Corp. v. Marine Midland Bank-New York,*
    348 N.E.2d 581 (N.Y. 1976)......................................................................11

*Amigo Foods Corp. v. Marine Midland Bank-New York,*
    61 A.D.2d 896 (N.Y. App. Div. 1978) ......................................................................13

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.,*
    480 U.S. 102 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)................................22, 23, 24, 25

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    305 F.3d 120 (2d Cir. 2002)................................................................10, 19, 22

*Beach v. Citigroup Alternative Inv. LLC,*
    No. 12-7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ......................................9

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007)................................................................10, 15

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ......................................19

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)......................................................................19

*Chernus v. Logitech, Inc.,*
    No. 17-673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018)......................................9

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.,*
    No. 14-5216, 2015 WL 4164763 (S.D.N.Y. July 10, 2015)......................................13

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,*
    No. 11-7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ......................................19

*Denberg v. U.S. R.R. Ret. Bd.,*
    696 F.2d 1193 (7th Cir. 1983) ......................................................................9

*Elsevier, Inc. v. Grossman,*
    77 F. Supp. 3d 331 (S.D.N.Y. 2015)......................................................................19

*Enrenfeld v. Mahfouz*,
    881 N.E.2d 830 (N.Y. 2007)........................................................................10

*Fiedler v. First City Nat'l Bank of Houston*,
    807 F.2d 315 (2d Cir. 1986).......................................................................14

*Fisher v. Teva PFC, SRL*,
    No. 04-2780, 2005 WL 2009908 (D.N.J. Aug. 16, 2005) ......................................24

*Giron v. Hong Kong & Shanghai Banking Co., Ltd.*,
    No. 15-8869, 2017 WL 5495504 (C.D. Cal. Nov. 15, 2017) ...................................7, 8, 18, 24

*Gmurzynska v. Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003)..........................................................24

*Hau Yin To v. HSBC Holdings PLC*,
    700 F. App'x 66 (2d Cir. 2017) ...............................................................11, 13

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x
    66 (2d Cir. 2017)...............................................................................13, 15, 17

*Hearst Corp. v. Goldberger*,
    No. 96-3620, 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997).......................................14

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).........................................................15

*In re Cypress Semiconductor Sec. Litig.*,
    864 F. Supp. 957 (N.D. Cal. 1994) ...........................................................24

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998)....................................................................22

*In re Terrorist Attacks on September 11, 2011*,
    714 F.3d 659 (2d Cir. 2013)..................................................................9, 19

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)..............................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)...................................................................10, 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)..................................................................11, 12

*Licci v. Lebanese Canadian Bank*,
    984 N.E.2d 893 (N.Y. 2012)..................................................................11, 12, 14, 15, 17

v

*Maranga v. Vira,*
      386 F. Supp. 2d 299 (S.D.N.Y. 2005)....................................................................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
      84 F.3d 560 (2d Cir. 1996).................................................................................23

*Pablo Star Ltd. v. Welsh Gov't,*
      170 F. Supp. 3d 597 (S.D.N.Y. 2016)..................................................................9

*Reebok Int'l Ltd. v. McLaughlin,*
      49 F.3d 1387 (9th Cir. 1995) .............................................................................15

*Rushaid v. Pictect & Cie,*
      68 N.E.3d 1 (N.Y. 2016)......................................................................12, 17, 18

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*
      *Kommanditgesellschaft v. Navimpex Centrala Navala,*
      989 F.2d 572 (2d Cir. 1993).................................................................................9

*Sherwin-Williams Co. v. Avisep, S.A. De C.V.,*
      No. 14-6227, 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ................................23, 24

*SPV OSUS Ltd. v. UBS AG,*
      114 F. Supp. 3d 161 (S.D.N.Y. 2015)...............................................................20, 21

*SPV Osus Ltd. v. UBS AG,*
      882 F.3d 333 (2d Cir. 2018)..............................................................................20, 21

*Sunward Elec., Inc. v. McDonald,*
      362 F.3d 17 (2d Cir. 2004)...................................................................................9

*Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth,*
      500 F. Supp. 565 (C.D. Cal. 1980) ......................................................................7

*Walden v. Fiore,*
      571 U.S. 277 (2014)...........................................................................................19

*Zibiz Corp. v. FCN Tech. Solutions,*
      777 F. Supp. 2d 408 (E.D.N.Y. 2011) ................................................................14

**Statutes**

18 U.S.C. § 1965(b) ..........................................................................................................19

**Rules**

N.Y. C.P.L.R. § 302(a) .....................................................................................................10

N.Y. C.P.L.R. § 302(a)(1)..................................................................................................14

142000399

## I.     INTRODUCTION

Over six years ago, California residents Rigoberto Vasquez and Eva Garcia ("Plaintiffs") made a total of three wire transfers from California to Hong Kong to invest in "WCM777," a company promising to deliver 100% returns in 100 days. Plaintiffs' returns never materialized. Rather than sue WCM777, the entity that took their money, Plaintiffs sued two banks with which they have no relationship: The Hongkong and Shanghai Banking Corporation Limited ("HSBC Hong Kong"), the Hong Kong bank at which WCM777 held accounts in Hong Kong, and HSBC Bank USA, N.A. ("HSBC USA"), a domestic intermediary bank through which Plaintiffs' funds theoretically "traveled" en route to Hong Kong as part of the automated wire transfer process. Plaintiffs' misguided theory of liability is that HSBC Hong Kong and HSBC USA aided and abetted WCM777's alleged fraud, conversion, breach of fiduciary duty, and racketeering by performing ordinary banking functions. Crucially for jurisdiction, all the allegedly liability-producing conduct attributed to HSBC Hong Kong happened *in Hong Kong*; none happened here. By contrast, the allegedly liability-producing conduct taking place in the United States is attributed to HSBC USA, which has already been dismissed from the case on the merits.

This is a forum-shopping retread of a case Plaintiffs' counsel already litigated and lost in federal court in California using three other California residents as plaintiffs. The district court there dismissed HSBC Hong Kong for lack of personal jurisdiction. The district court also granted summary judgment for HSBC USA and denied class certification because the wire transfers for those plaintiffs did not go through HSBC USA. Plaintiffs re-filed this action in New York, narrowing the class definition to only those persons who wired money through the correspondent account at HSBC USA—the correspondent account that this Court already ruled did not cause Plaintiffs' claims and was not necessary to the wire transfers alleged in this case. That account, which lacks a causal connection to Plaintiffs' theory of liability in the case, is the *only jurisdic-*

*tional contact with New York*. The Plaintiffs have no connection to New York; they are Californians. WCM777 has no connection to New York; it is in Hong Kong and allegedly had operations in California. And save for its correspondent account at HSBC USA—and its back-up account at Bank of America—HSBC Hong Kong has no connection to New York; it is a Hong Kong bank with operations entirely outside the United States. The fact that Plaintiffs initiated three wire transfers, and that they or their banks instructed that those wires be routed through HSBC USA on their electronic journey to Hong Kong, is no basis for personal jurisdiction over HSBC Hong Kong in New York.

To meet their burden to establish personal jurisdiction over HSBC Hong Kong, Plaintiffs must identify claim-related conduct, initiated by HSBC Hong Kong, directed at New York. They cannot do so, because no such conduct exists. Instead, all claim-related conduct begins and ends in California with Plaintiffs sending wires to WCM777 in Hong Kong—that's how Plaintiffs were allegedly hurt. And that conduct fails to meet personal jurisdiction requirements because it was initiated by the wrong party (Plaintiffs, not HSBC Hong Kong), originated in the wrong state (California, not New York), and traveled in the wrong direction (away from the U.S., not toward it). Plaintiffs decided to send their payments to WCM777 in U.S. dollars ("USD"), and Plaintiffs (or their banks) dictated the bank-to-bank route their wire transfers would take; HSBC Hong Kong had no control over the route Plaintiffs' wires took and was a mere passive recipient of those wires.

Causation is also missing. Plaintiffs' claims against HSBC Hong Kong do not arise from the existence or operation of the correspondent account, this case's one and only connection to New York. *The correspondent account was the basis for alleged liability against HSBC USA.* Plaintiffs' claims against HSBC Hong Kong are based on HSBC Hong Kong's having allowed

2

WCM777 to open and maintain a bank account *in Hong Kong*. Because there is no nexus between Plaintiffs' theory of liability against HSBC Hong Kong and the correspondent account, Plaintiffs' claims against HSBC Hong Kong do not arise from the existence or operation or conduct of that account. This means there is no personal jurisdiction in New York.

Finally, asserting jurisdiction over HSBC Hong Kong violates the Constitution because it is unreasonable. Every relevant factor tips sharply against jurisdiction, which is exactly what one would expect of a case in which Plaintiffs are California citizens with no connection to New York; Plaintiffs' counsel are forum shopping after their previous attempt to assert personal jurisdiction in California over HSBC Hong Kong failed; the burden on HSBC Hong Kong to defend itself in a foreign country where it does no business is severe; and Hong Kong's government has a far greater interest in the disposition of claims against one of its banks than New York's.

HSBC Hong Kong should not be a party to this litigation. The Court should grant HSBC Hong Kong's renewed motion to dismiss for lack of personal jurisdiction with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Defendant HSBC Hong Kong Is a Hong Kong Bank with No Connection to New York Except for Two Correspondent Bank Accounts

HSBC Hong Kong is an unlisted limited liability company incorporated in the Hong Kong Special Administrative Region of the People's Republic of China. (Declaration of Yiu Susan Yuen Shan ("Yiu Decl.") ¶ 2.) HSBC Hong Kong is headquartered in Hong Kong. (*Id.*) It is separate and independent from HSBC USA. (*Id.* ¶ 19.) It has no branches, no employees, and no property (owned or leased) in New York or the United States. (*Id.* ¶¶ 6–9.) It does not advertise or solicit business in New York or the United States. (*Id.* ¶¶ 10–11.) It is not qualified to transact business in any state within the United States. (*Id.* ¶ 12.) HSBC Hong Kong focuses its business on customers doing business in Asia-Pacific, not New York or the United States. (*Id.* ¶ 17.) Its

customer accounts (and the funds deposited in them) are all maintained and serviced outside the United States. (*Id.* ¶¶ 4–5.) Its personnel, core operating systems, and records are all located outside the United States. (*Id.* ¶ 20.)

HSBC Hong Kong maintains a correspondent bank account at HSBC USA and a back-up correspondent account at Bank of America. (Yiu Decl. ¶ 13; Declaration of George Rajah ("Rajah Decl.") ¶ 9.) These are not ordinary bank accounts. They exist only to passively facilitate interbank (*i.e.*, bank-to-bank) funds transfers from other banks to HSBC Hong Kong. (*Id.*) HSBC Hong Kong customers have no access to the correspondent accounts and cannot use them for ordinary banking activities. (*Id.*) Whether a wire transfer goes through the correspondent account at HSBC USA is controlled by the originator of the wire, or the originator's bank. (Rajah Decl. ¶¶ 4–8, 13.) HSBC Hong Kong has no control over whether a wire it receives travels through the correspondent bank account at HSBC USA. (*Id.* ¶ 8.) Indeed, as a correspondent bank, HSBC USA's execution of properly formatted wire transfer instructions happens passively, automatically, and without discretionary action by HSBC USA or HSBC Hong Kong; and funds remain in the correspondent account for seconds or less. (*Id.* ¶ 6.) HSBC Hong Kong can receive USD denominated payments multiple ways, including through correspondent accounts or through any number of other banks locally in Hong Kong. (Yiu Decl. ¶¶ 14–15; Rajah Decl. ¶¶ 10–13.)

**B.    Plaintiffs Are *California* Residents Who Were Duped in *California* by a Company Operating in *California* Whose Principal Resided in *California***

WCM777 was a collection of companies with U.S. headquarters in California, controlled by Phil Ming Xu, a California resident. (First Amended Complaint ("FAC") ¶¶ 1, 12–14.) WCM777 solicited investors in the United States and abroad by promising a 100% return on investment in 100 days in both cash and "points." (*Id.* ¶¶ 17(b), 17(e), 17(g).) WCM777 used the

"bulk of investor funds" to purchase property in the United States. (*Id.* ¶ 17(h).) WCM777 opened a bank account at HSBC Hong Kong in July 2013. (*Id.* ¶ 26.)

Plaintiffs are California residents who made three wire transfers from California to WCM777's account in Hong Kong six years ago. (FAC ¶¶ 3–4, 56–57, 71.) Eva Garcia transferred $2,000 on October 11, 2013 and $2,000 on October 15, 2013 from JPMorgan Chase in California. (*Id.* ¶ 57; Declaration of Carol Calabrese ("Calabrese Decl.") ¶¶ 4–5, Exs. 1–2.) Rigoberto Vasquez transferred $100,000 on October 21, 2013 from U.S. Bank, N.A., in California. (FAC ¶ 56; Calabrese Decl. ¶ 6, Ex. 3.) Plaintiffs' three wire transfers went through HSBC Hong Kong's correspondent account at HSBC USA in New York. (FAC ¶¶ 56–57; Calabrese Decl. ¶ 3.) The decision to route those transfers through HSBC USA was made by Plaintiffs or Plaintiffs' banks; it was not and could not have been made by HSBC Hong Kong. (Rajah Decl. ¶¶ 3, 7– 8, 14.) Plaintiffs did not make or receive any other wire transfers to or from WCM777 that traveled through the correspondent account at HSBC USA. (Calabrese Decl. ¶¶ 3, 7; Declaration of Gregory S. Korman ("Korman Decl.") ¶ 34.)

Plaintiffs seek to represent investors around the world whose wire transfers from anywhere to WCM777 in Hong Kong went through the correspondent account at HSBC USA from June 1, 2013 to May 31, 2014. (FAC ¶ 55.) As the beneficiary bank, HSBC Hong Kong did not and could not have controlled the decision to route any other wire transfers for other investors through the correspondent account in New York. (Rajah Decl. ¶¶ 7–8.)

### C.   Plaintiffs' Threadbare Allegations of Personal Jurisdiction

Plaintiffs' allegation of "personal jurisdiction" is conclusory and treats all defendants the same. (FAC ¶ 53.) The alleged connection between HSBC Hong Kong and New York is the existence of the correspondent account at HSBC USA. (*Id.* ¶¶ 2, 6, 34, 44.) Plaintiffs allege over

3,000 wire transfers totaling over $45 million went through this correspondent account to WCM777's accounts in Hong Kong. (*Id.* ¶ 44.) No other allegations refer to New York.

Plaintiffs discuss what they call $12 million in "lulling payments" from WCM777 to Global Payout, a California entity that allegedly distributed payments to WCM777's "investor base." (FAC ¶ 45.) None of that alleged money went to Plaintiffs, and no facts connect Plaintiffs to any wires *from* WCM777, whether to Global Payout or anyone else.[1] Plaintiffs also allege HSBC USA sent two emails and HSBC Hong Kong responded to one of them confirming that it knew its customer WCM777. (*Id.* ¶¶ 37–38, 41.)

## III. PROCEDURAL BACKGROUND

### A. This Is Plaintiffs' Counsel's Second Attempt to Prosecute This Case

#### 1. The district court in the California Action ruled that HSBC Hong Kong was not subject to personal jurisdiction

Plaintiffs' counsel failed to establish personal jurisdiction over HSBC Hong Kong in an identical putative class action in California. In 2015, plaintiffs Ramiro Giron, Nicolas J. Herrera, and Orlando Antonio Mendez (the "California Plaintiffs"), represented by Plaintiffs' counsel, filed a putative class action against HSBC Hong Kong and HSBC USA in the Central District of California (the "California Action") alleging the same claims. (Korman Decl. ¶ 3, Ex. B.) The class they proposed included Plaintiffs. (*Id.* ¶ 79.)

The district court dismissed HSBC Hong Kong for lack of personal jurisdiction in October 2016. (Korman Decl. ¶ 16, Ex. E.) Applying the constitutional due process test, the court ruled that the allegations against HSBC Hong Kong "only reflect passive activities," and the

---

[1]      Jurisdictional discovery reveals that Plaintiffs' allegations are misleading. Plaintiffs refer to $12 million in payments that WCM777 purportedly sent to Global Payout in California. Even if true, only three wires in the aggregate amount of $200,000 went through the correspondent account at HSBC USA, and *nothing* connects those wires to Plaintiffs. (*See* Korman Decl. ¶ 34.)

142000399

conduct attributed to HSBC Hong Kong—"maintaining deposit accounts in a foreign country and accepting deposits in that country"—took place in Hong Kong and was not "directed to any other nation or jurisdiction." (*Id.* at 5.) Moreover, the correspondent account relationship between HSBC Hong Kong and HSBC USA lacked the requisite "strong nexus" to the claims asserted. (*Id.* (citing *Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth*, 500 F. Supp. 565, 569 (C.D. Cal. 1980)).) The court later denied Plaintiffs' counsel leave to file a fourth amended complaint, finding "apparent bad faith" when Plaintiffs' counsel tried to re-add HSBC Hong Kong after it was dismissed. (Korman Decl. ¶ 18, Ex. F at 5–6.)

> **2.  *In the California Action, summary judgment is granted, class certification is denied, and Plaintiffs' counsel abandon their appeal***

On November 15, 2017, the district court granted summary judgment for remaining defendant HSBC USA and denied class certification. *Giron v. Hong Kong & Shanghai Banking Co., Ltd.*, No. 15-8869, 2017 WL 5495504, at *16 (C.D. Cal. Nov. 15, 2017). The California Plaintiffs had failed to create a triable issue of fact on causation because none of their wires, or the wires of the eight other putative class members they identified in discovery, went through the correspondent account at HSBC USA. *Id.* at *10. The California Plaintiffs made a last-minute request to substitute new class representatives, which was denied because: (1) the court previously granted "several extensions" to move for class certification; (2) the California Plaintiffs "had significant time to conduct discovery and to identify plaintiffs" that would be typical and adequate; (3) HSBC USA raised the typicality issue "early in the case"; (4) the California Plaintiffs asked for substitution only after they were challenged in opposition to class certification; and (5)

142000399

the parties would need to take discovery for any new plaintiffs, which was "unacceptable given the [c]ourt's prior extensions." *Id.* at \*15.[2]

Before filing this case, Plaintiffs' counsel noticed an appeal to the Ninth Circuit. (Korman Decl. ¶ 22.) They dismissed the appeal after filing this action, just before their opening brief was due. (*Id.* ¶¶ 24–30, Ex. G.)

### B.   This Court Dismisses HSBC USA and Orders Jurisdictional Discovery

On May 30, 2019, this Court ruled general personal jurisdiction over HSBC Hong Kong was lacking. (Dkt. 85 at 14–15.) The Court ordered jurisdictional discovery, however, into the first prong of New York's long-arm statute, without reaching the other elements of specific jurisdiction. (*Id.* at 24–25.) After the Court declined to reconsider that ruling (Dkt. 92), HSBC Hong Kong responded to document requests and produced documents; HSBC USA responded to a subpoena and produced documents; and Plaintiffs deposed Ms. Yiu in Hong Kong and Mr. Rajah in New York. (Korman Decl. ¶¶ 32–33, 35–36.) Plaintiffs brought multiple discovery motions that were denied. (Dkt. 102 & 110.)

In dismissing HSBC USA with prejudice under Rule 12(b)(6), the Court held the FAC failed "by a good margin" to allege that HSBC USA substantially assisted WCM777's fraudulent activity. (Dkt. 85 at 35, 38.) One reason was because "the maintenance of the correspondent account is not adequately pled to have been the proximate cause of the alleged fraud, breach of fiduciary duty, or conversion." (*Id.* at 37.) "The FAC does not allege that HSBC USA maintained HSBC Hong Kong's only correspondent account, or that the use of a correspondent account was necessary to these transfers." (*Id.*)

---

[2]      This case is a transparent end-run around many of the rulings made in the California Action, but this ruling in particular. *See Giron*, 2017 WL 5495504 at \*12 (noting that "Plaintiffs wish they had prosecuted this action differently").

## IV. LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff's burden is to make a prima facie showing that jurisdiction exists, *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013), with respect to each claim asserted, *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). "In determining whether a plaintiff has met this burden, [the court] will not draw argumentative inferences in the plaintiff's favor," nor will it "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d 673. Allegations are taken as true only to the extent uncontroverted by the defendant's affidavits. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesell-schaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993); *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) ("the Court need not accept as true allegations controverted by the defendant's affidavits"). If the parties present conflicting affidavits, factual disputes are resolved in the plaintiff's favor. *Seetransport*, 989 F.2d at 580.

"In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Beach v. Citigroup Alternative Inv. LLC*, No. 12-7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014). "Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Id.*; *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); *Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983) ("Since the district court never had jurisdiction over the claim of the class representative … it had no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction."); *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) ("it is the named plaintiff's claim that must arise out of or result from the defendant's fo-

rum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification") (citing cases).

## V.    THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER HSBC HONG KONG

For specific jurisdiction, the requirements of New York's long-arm statute and the due process clause of the U.S. Constitution must be satisfied. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). Neither requirement is satisfied here.

### A.    Specific Jurisdiction over HSBC Hong Kong Is Not Authorized under the State Long-Arm Statute

A New York court may assert specific jurisdiction over a defendant only if the requirements of its long-arm statute are met. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). Relevant here, the statute requires that (1) the defendant transacts business in New York; and (2) the cause of action arises from transaction of business in New York. *Licci*, 673 F.3d at 60 (citing N.Y. C.P.L.R. § 302(a) & *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)); (Dkt. 85 at 15 & 15 n.2.) Neither requirement is met.

#### 1.    *The first requirement for statutory jurisdiction is not met because HSBC Hong Kong did not transact business in New York*

"To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels*, 171 F.3d at 787. The "overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within" New York. *Enrenfeld v. Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007) (internal quotation marks omitted). "Purposeful availment occurs when the non-domiciliary, through volitional acts, seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (summary order) (internal quotation marks and altera-

tions omitted). "At a minimum, the defendant must, on [its] own initiative … project [itself] into the state to engage in a sustained and substantial transaction of business." *Id.* (internal quotation marks and alterations omitted).

HSBC Hong Kong has not done that. Far from projecting itself into New York, HSBC Hong Kong has no branches, property, employees, records, or customer accounts in New York. (Yiu Decl. ¶¶ 3–9, 20.) It does not advertise or solicit business in New York, let alone in a "sustained and substantial" way, instead focusing its business on customers doing business in Asia-Pacific, on the other side of the world. (*See id.* ¶¶ 10–11, 17; *Hau Yin To*, 700 F. App'x at 67. HSBC Hong Kong's only connection to New York is having a correspondent bank account in New York—and that contact is insufficient for jurisdiction in this case.

### a.    *Having a correspondent account is not the transaction of business*

In this circuit, the "mere maintenance of correspondent bank accounts at an affiliate bank in New York" is not the transaction of business. *See Hau Yin To*, 700 F. App'x at 67; *Amigo Foods Corp. v. Marine Midland Bank-New York*, 348 N.E.2d 581 (N.Y. 1976) ("standing by itself, a correspondent bank relationship, without any other indicia or evidence to explain its essence, may not form the basis for long-arm jurisdiction"). The flow of money through that correspondent account qualifies as a transaction of business only if the *defendant's* use of the account was "purposeful." *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Whether or not the use of the correspondent account meets the purposefulness test is a "fact-intensive inquiry" for the Court. *See Licci*, 732 F.3d at 168; *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 899–900 (N.Y. 2012) (inquiry "requires examination of the particular facts in each case").

At a minimum, use of the correspondent account must involve some sort of *deliberate action* by the *defendant* directed at New York. For example, in *Licci*, the defendant foreign bank

11

took deliberate action when *it* directed the routing of wires from overseas to its New York corre-spondent account, even though it could have routed them elsewhere, presumably because it was cheaper and easier for the foreign bank and its terrorist customer to do so. *See Licci*, 732 F.3d at 168; *Licci*, 984 N.E.2d at 901 ("While it may be that [bank] could have routed the dollar transac-tions on behalf of [customer] elsewhere, the fact that [bank] used a New York account 'dozens' of times indicates desirability and a lack of coincidence."). In *Rushaid*, the foreign bank and its personnel acted deliberately when *they* designed and orchestrated the complained-of bribery and kickback scheme and, though other jurisdictions were available, chose New York as the location to receive deposits that they then distributed to their foreign customer's corrupt employees. *See Rushaid v. Pictect & Cie*, 68 N.E.3d 1, 5 & 11 (N.Y. 2016) (The "vendors' choice to deposit money in New York was precisely part of defendants' design" to launder money.). The foreign banks did *something* affirmative in furtherance of the injurious scheme.

Here, in contrast, HSBC Hong Kong aimed no case-related conduct at New York. For Plaintiffs' three wire transfers—the only wire transfers that are legally material—HSBC Hong Kong did *not* decide to wire money from California to Hong Kong, did *not* select the currency for the transaction, and did *not* direct the route the wire transfers took. **Those decisions *all* were made in California by Plaintiffs or Plaintiffs' banks**. (*See* Rajah Decl. ¶¶ 3, 7–8, 14; Calabre-se Decl. ¶¶ 3–6, Exs. 1–3.) Personal jurisdiction over HSBC Hong Kong cannot be based on what Plaintiffs did, only on what HSBC Hong Kong did. And HSBC Hong Kong did nothing case-related but passively receive funds, in and out of a correspondent account, which is not pur-poseful and does not confer jurisdiction. *See Hau Yin To v. HSBC Holdings PLC*, No. 15-3590, 2017 WL 816136, at *7 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).

142000399

In *Hau Yin To*, for example, the district court did not have jurisdiction over the foreign banks that served as administrators and custodians of the feeder funds that allegedly funneled money into the Madoff Ponzi scheme. Just as in this case, the defendants' transfer of funds into and out of New York bank accounts was "passive," "merely incidental," and "not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme." *Han Yin To*, 2017 WL 816136 at *7 n.6 (distinguishing scheme in *Rushaid*), *aff'd by Hau Yin To*, 700 F. App'x at 67–68 ("Plaintiffs have not alleged the kind of intentional and repeated use of correspondent accounts that amounts to a transaction of business"); *see also Amigo Foods Corp. v. Marine Midland Bank-New York*, 61 A.D.2d 896 (N.Y. App. Div. 1978) (no jurisdiction where defendant "has passively and unilaterally been made the recipient of funds"); *Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14-5216, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (granting motion to dismiss where use of the foreign bank's correspondent account during a wire transfer initiated by a non-customer in Minnesota was "not even [the bank's] doing").[3]

The passage of Plaintiffs' wire transfers through HSBC Hong Kong's correspondent account was passive, fleeting, nominal, and *instigated by Plaintiffs*. It was not HSBC Hong Kong, but Plaintiffs and their banks who decided *whether* to send the wires, *in what currency*, and *through which banks*. (*See* Rajah Decl. ¶¶ 3, 7–8, 14; Calabrese Decl. ¶¶ 3–6.) That, as this Court recognized, makes the facts "more analogous to those of *Amigo Foods*, in which the defendant bank had not made the choice to use this local account." (Dkt. 85 at 24–25.)

---

[3]     This Court's prior order distinguishes *Hau Yin To* on the ground that it did not involve a correspondent account in New York (Dkt. 85 at 23 n.4), but it did. *See Hau Yin To*, 700 F. App'x at 67–68; Defendants' Letter at 1–2, *Hau Yin To v. HSBC Holdings PLC*, No. 15-3590 (S.D.N.Y. Dec. 9, 2016), Dkt. 42 ("unlike the facts relied upon in the *Rushaid* Decision, the Amended Complaint does not allege that the Foreign HSBC Defendants' purported use of New York correspondent bank accounts was 'integral' to a tortious scheme that they 'orchestrated'"); Plaintiffs' Letter at 2, *Hau Yin To v. HSBC Holdings PLC*, No. 15-3590 (S.D.N.Y. Dec. 12, 2016), Dkt. 43.

>    b.   *The other potential New York contacts—emails and other people's*
>         *wires—do not establish the transaction of business*

Other people's wire transfers (whether to or from WCM777's account in Hong Kong)

cannot be used to establish jurisdiction over Plaintiffs' claims. The only wire transfers that are

relevant to this case are *Plaintiffs'* three wire transfers. (*See supra* § IV); *Licci*, 984 N.E.2d at

900 ("Aroostook's purported use of the account in this transaction, the sole potential basis for

personal jurisdiction, was essentially adventitious—i.e., it was not even Aroostook's doing.")

(discussing *Amigo Foods*). Moreover, other investors' wires to Hong Kong do not amount to the

transaction of business for the same reason Plaintiffs' wires do not—HSBC Hong Kong did not

control the route of those wires either, only the sender has that power. (*See* Rajah Decl. ¶¶ 7–8.)

The few emails alleged between HSBC Hong Kong and HSBC USA—even if they were

sent to or from New York (which is not alleged)—do not amount to the transaction of business in

New York either. The emails do not concern Plaintiffs or their wire transfers. (*See* FAC ¶¶ 37–

41.) Moreover, emails "from outside New York to people in New York are not sufficient to es-

tablish personal jurisdiction under CPLR § 302(a)(1) or the due process clause." *Hearst Corp. v.*

*Goldberger*, No. 96-3620, 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997); *see also Fiedler v.*

*First City Nat'l Bank of Houston*, 807 F.2d 315, 318 (2d Cir. 1986). This is especially true of an

email with the characteristics of the one alleged here, which: (1) was sent in response to a com-

munication initiated by another party, HSBC USA, with no purposeful direction to New York,

*see Zibiz Corp. v. FCN Tech. Solutions,* 777 F. Supp. 2d 408, 422 (E.D.N.Y. 2011) (defendant

did not "project itself into New York" where emails and calls arose from "plaintiff's initial

communication"); (2) did not concern a transaction with its "center of gravity" in New York, but

instead was about the Hong Kong account of a California-based customer, *see Maranga v. Vira*,

386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("communications into New York will only be suffi-

14

cient to establish personal jurisdiction if they were related to some transaction that had its 'center

of gravity' inside New York, into which a defendant 'projected himself'"); and (3) was inci-

dental to the non-purposeful use of the correspondent account, *see Han Yin To*, 2017 WL 816136

at *6 (foreign defendants' "communications and payments" to and from "BLMIS in New York"

were "insufficient to 'project'" the defendants into New York), *aff'd*, 700 F. App'x at 67; *see*

*also Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (same). The first

requirement for statutory jurisdiction is not met. [4]

> ### 2. *The second requirement for statutory jurisdiction is not met because Plaintiffs' claims against HSBC Hong Kong do not arise from wires going through New York*

A claim arises from a transaction where "there is an articulable nexus, or a substantial re-

lationship, between the claim asserted and the actions that occurred in New York." *Best Van*

*Lines*, 490 F.3d at 246; *see also Licci*, 984 N.Ed.2d at 900. The inquiry "focuses on the defend-

ant's conduct." *Licci*, 984 N.E.2d at 901. Plaintiffs' claims fail the second element for statutory

jurisdiction because they do not arise from anything HSBC Hong Kong directed at New York.

> #### a. *The correspondent account was the basis for claimed liability against HSBC USA, but is irrelevant to liability against HSBC Hong Kong*

The act of allowing wires to travel through the correspondent account in New York en

route to WCM777 in Hong Kong was Plaintiffs' theory for liability *against HSBC USA*. (FAC

¶¶ 71(b), 80, 90, 98 (alleging HSBC USA "substantially assisted and aided and abetted

---

[4]    The other alleged actions attributed to HSBC Hong Kong in the FAC are not contacts
with New York and are therefore irrelevant to the long-arm statute analysis. *See Licci*, 673 F.3d
at 60 (citing N.Y. C.P.L.R. § 302(a)). The email and telephone calls by HSBC Hong Kong em-
ployees to WCM777 were to California, not New York. (FAC ¶ 29.) HSBC Hong Kong's re-
sponse to the receiver was to California, not New York. (*Id.* ¶¶ 1, 16, 47); *see also Reebok Int'l*
*Ltd. v. McLaughlin*, 49 F.3d 1387, 1393 (9th Cir. 1995) (foreign bank's "'violation' of the in-
junction did not subject it to personal jurisdiction in California because it was under no obliga-
tion to comply in the first place").

WCM777 by serving at [*sic*] the intermediary bank by which investors' money could be transferred to WCM777 accounts in Hong Kong").) The basis for liability against HSBC Hong Kong, in contrast, is its willingness to provide banking services to WCM777 *outside the United States*, in Hong Kong. Plaintiffs' election to route their wires through HSBC USA, rather than via the variety of other payment methods, is irrelevant to Plaintiffs' own theory of liability against HSBC Hong Kong.

None of Plaintiffs' aiding and abetting claims or RICO claim is linked to New York. The claims are connected only to Hong Kong, where WCM777 operated and had bank accounts, and to California, where Plaintiffs live, had bank accounts, and were duped into wiring money to Hong Kong. (FAC ¶¶ 3–4, 13.) HSBC Hong Kong's alleged wrongdoing was "knowing" WCM777 was a Ponzi scheme and providing it with a bank account "into which investors' money could be wire transferred to" [*sic*]; allowing funds to be commingled funds with other WCM777 accounts in Hong Kong; failing to comply with a court order issued in California; and wiring money to WCM777 in the "United States." (FAC ¶¶ 15, 16, 71(a), (d), (e), 79, 80, 85, 89, 95, 97; *see also* Yiu Decl. ¶¶ 5, 7.) None of these alleged things happened in New York. Plaintiffs' claims are based on bank services HSBC Hong Kong performed in Hong Kong.

> **b.**   *HSBC Hong Kong's use of the correspondent account is not substantially related to Plaintiffs' claims*

The role the correspondent account played in this alleged Ponzi scheme is fundamentally different than the role of the bank accounts in cases where personal jurisdiction has been found. In those cases, the bank and the account played an integral, even indispensable, role in the injury-producing conduct. In *Rushaid*, the money laundering case, the correspondent account was literally used to "wash" the illegal money—the wire transfers *were* the wrongful conduct of which the bank was accused, so where they happened arguably mattered. *See Rushaid*, 68 N.E.3d

at 12 (money-laundering scheme that defendant "designed relied precisely on the existence of bank accounts in different jurisdictions, through which the money would pass" and scheme "could not proceed without the use of correspondent bank account" for bribes and kickbacks); *see also Hau Yin To*, 2017 WL 816136 at *7 n.6 ("In *Rushaid*, there was a scheme in which the foreign bank specifically contemplated wiring tainted funds into a New York account from which corrupt payments were then further distributed to individuals with accounts at the foreign bank."). In the *Licci* series of terrorist-financing cases, the courts took as true that the bank was engaged in *intentional terrorist financing* and was wiring money *purposefully* through New York, in lieu of other choices, because doing so was better for its terrorist customer. *See Licci*, 984 N.E.2d at 901 (foreign bank "engaged in terrorist financing by using its correspondent account in New York to move the necessary dollars").

Here, the existence of the correspondent account was not necessary, integral, beneficial, or even relevant to the alleged injury-producing harm: someone in California convincing Plaintiffs to invest in a sham company in Hong Kong. Yes, their wires went through the correspondent account in New York for a few seconds on the way to Hong Kong, but the route taken by the money Plaintiffs invested played no part in causing their alleged harm. The money would be just as lost had they sent a check or paid with a credit card or used PayPal. Moreover, the route was Plaintiffs' (or their banks') decision, not HSBC Hong Kong's. In *Hau Yin To*, the foreign banks' alleged use of correspondent accounts at HSBC USA to transfer money to and from BLMIS in New York was "merely incidental and not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme." *See Hau Yin To*, 2017 WL 816136 at *7 n.6. That is also the case here; HSBC Hong Kong did not control the path Plaintiffs' wires took to Hong Kong.

The correspondent account certainly was not vital to the Ponzi scheme. *Cf. Rushaid*, 68 N.E.3d at 11–12. As the Court observed, Plaintiffs do not allege that "the use of the correspondent account was necessary to [their] transfers." (Dkt. 85 at 37.) And of course it was not necessary. Plaintiffs did not rely on the existence of the correspondent account—if they even knew it existed—to wire money to WCM777 in Hong Kong. Plaintiffs wired and lost their money based on WCM777's "promised returns" on their investments. (*See* FAC ¶ 17.)

It is undisputed that the correspondent bank was not necessary to the alleged Ponzi scheme, because Plaintiffs' wire transfers did not have to travel through the correspondent account to reach WCM777. (*See* Yiu Decl. ¶¶ 14–15; Rajah Decl. ¶¶ 10–12.) In the California Action, *none* of the wires of the three plaintiffs or eight putative class members went through the correspondent account in New York. (*See* Korman Decl. ¶ 31, Ex. H (Annunziata Decl.) ¶¶ 5–15); *Giron*, 2017 WL 5495504 at *10 ("Plaintiffs do not submit any evidence that HSBC USA was the only bank funding WCM777's fraudulent enterprise. In fact, it is the exact opposite. Every named plaintiff wired money to WCM777's account at HSBC Hong Kong through their own separate bank accounts, not through HSBC USA."). And as noted, there were other ways to get money to WCM777 in Hong Kong that bypass the correspondent account entirely, the decision to use any of which is controlled by Plaintiffs or their banks.

Plaintiffs were injured in California, where they were convinced to invest in WCM777 by wiring their investment funds to Hong Kong. None of that has anything to do with the existence or non-existence of a correspondent account in New York. Thus, the correspondent account is not substantially related to Plaintiffs' claims.

**B.      Specific Jurisdiction in New York over HSBC Hong Kong Is Not Authorized under the U.S. Constitution**

The exercise of jurisdiction over HSBC Hong Kong does not comport with constitutional due process. *See Bank Brussels*, 305 F.3d at 127 (2d Cir. 2002). "[D]ue process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable under the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945)). The reasonableness inquiry "varies inversely with the strength of the 'minimum contacts' showing." *Bank Brussels*, 305 F.3d at 129. Neither constitutional requirement for personal jurisdiction is met here.

*1.   HSBC Hong Kong lacks constitutional minimum contacts with New York*

To establish minimum contacts for due process purposes, the defendant must have purposefully directed its activities to the forum and the plaintiff's injuries must arise out of those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Only those contacts with the forum that give rise to Plaintiffs' claims matter. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The "defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284.

*a.   HSBC Hong Kong did not purposefully direct itself to New York.*

Because HSBC Hong Kong did not control whether Plaintiffs' wire transfers went through the correspondent account in New York, constitutional minimum contacts are lacking. HSBC Hong Kong did not purposefully direct its activities to New York. (*See supra* § V.1.)[5]

---

[5]      Only contacts with New York matter: nationwide jurisdiction under RICO is unavailable because HSBC Hong Kong is a foreign defendant served abroad. *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) ("[p]laintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit"). Plaintiffs' RICO claim also fails on the merits, which eliminates RICO as a basis for jurisdiction. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) ("However, the Court need not reach this question, because Plaintiffs 'cannot rely upon 18 U.S.C. § 1965(b)

> b.   *There is no causal link between HSBC Hong Kong's New York contacts and Plaintiffs' alleged injuries*

Plaintiffs bear a heavier burden under the constitutional arising-from prong than under the state long-arm statute because the Constitution has a genuine causation requirement. Where "the defendant has had only limited contacts with the state," as here, asserting jurisdiction is appropriate "only if the plaintiff's injury was proximately caused by those contacts." *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Even where the "defendant's contacts with the jurisdiction that relate to the cause of action are more substantial," which here they are not, but-for causation is required. *See id.*; *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015).

Neither causation test is met because *none* of Plaintiffs' claims arises from the existence, location, or operation of the correspondent account at HSBC USA. Their claims spring instead from the allegation that HSBC Hong Kong provided banking services to WCM777 *in Hong Kong*, supposedly out of reach of regulators. (*See supra* § V.2.a.) Simply put, Plaintiffs' claims against HSBC Hong Kong are inherently location-based—and the location is Hong Kong. This is evident from Plaintiffs' alleged injuries, which were caused by WCM777 tricking them in California and, arguably, in Hong Kong; HSBC Hong Kong's correspondent account in New York did not hurt them a bit. (*See* FAC ¶¶ 55–57 (alleging Plaintiffs lost money investing with WCM777)); *SPV OSUS*, 114 F. Supp. 3d at 171 ("plaintiffs' claims fail even to meet" the but-for test as they "were investors in BLMIS, and their injuries were caused by BLMIS's Ponzi scheme"), *aff'd SPV OSUS*, 882 F.3d at 344–45 ("handful of communications and transfers of

---

to establish personal jurisdiction over each of the defendants' if the RICO claim is dismissed.");
*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-7801, 2012 WL 1231775, at *8
(S.D.N.Y. Apr. 12, 2012) (Engelmayer, J.); (Dkt. 57 at 7–10, 19–21.)

funds" to New York were "too tenuous to support exercise of specific jurisdiction" where plaintiffs' injuries "were caused by Madoff and BLMIS"); (*supra* § V.2.b.)

Both the court in the California Action and this Court have recognized the absence of a connection between the claims asserted and the correspondent account. Judge Wright, applying the constitutional due process test, declined to assert personal jurisdiction over HSBC Hong Kong in the California Action because "the correspondent [banking] relationship between HSBC Hong Kong and HSBC USA lacks the requisite 'strong nexus' between the transaction in question and HSBC Hong Kong's activities." (Korman Decl., Ex. E at 6.) This Court, in dismissing the aiding and abetting claims against HSBC USA, found the "maintenance of the correspondent account is not adequately pled to have been the proximate cause of the alleged fraud, breach of fiduciary duty, or conversion." (Dkt. 85 at 37.)

The same failure to establish proximate causation dooms Plaintiffs' attempt to subject HSBC Hong Kong to personal jurisdiction on the basis of the correspondent account. *See SPV OSUS*, 114 F. Supp. 3d at 170 n.9 ("This jurisdictional defect is closely related to" defendants' "challenge to the sufficiency of the complaints, namely, failure to plausibly allege proximate causation"). Plaintiffs do not allege "that the use of a correspondent account was necessary to [their] transfers." (*See* Dkt. 85 at 37.) And HSBC Hong Kong has *proven* through evidence—though the burden is Plaintiffs'—that use of the correspondent account was not necessary and was controlled by Plaintiffs themselves (or their banks). Hence, the arising-from prong is not satisfied, necessitating dismissal. (*See* Dkt. 85 at 37); *SPV OSUS*, 114 F. Supp. 3d at 170 (court can reach arising-from prong without reaching minimum contacts prong).

> c.   *Plaintiffs' claims do not arise from non-Plaintiff wire transfers*

Plaintiffs rely heavily on the allegation that other people's wires went through the correspondent account, but those allegations are irrelevant to causation. Plaintiffs' claims do not arise

from the behind-the-scenes banking-system route taken by the wire transfers made by *other* people. Plaintiffs did not invest in the alleged Ponzi scheme because someone *else's* wire was routed through a correspondent account in New York. *See SPV OSUS*, 882 F.3d at 344–45. They did not lose their money because someone else's money went through a correspondent account in New York. Instead, Plaintiffs' claims against HSBC Hong Kong are wholly based on three one-way transactions, from Plaintiffs in California to WCM777 in Hong Kong. Once Plaintiffs sent their money, their loss was complete. *See In re Merrill Lynch Ltd. P'ships Litig*., 154 F.3d 56, 59 (2d Cir. 1998) ("[I]nvestors allege that the partnerships were fraudulent at the outset because they could never achieve the promised objectives. Accepting that allegation as true, the investors sustained recoverable out-of-pocket losses when they invested.").

In discovery, HSBC USA produced the record of wires that went *from* WCM777 in Hong Kong through the correspondent account in New York en route to various locations, none of which were in New York. (*See* Korman Decl. ¶ 34.) None of these wires are the arising-from cause of Plaintiffs' losses either. There is no connection whatsoever between Plaintiffs and any funds that WCM777 wired from HSBC Hong Kong to third parties.

### 2. *Exercising personal jurisdiction over HSBC Hong Kong is unreasonable*

The factors to assess whether the exercise of jurisdiction would comport with fair play and substantial justice include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in further substantive social policies. *Bank Brussels*, 305 F.3d at 129. Every factor compels the conclusion that personal jurisdiction should not be asserted over HSBC Hong Kong.

*First Factor*: Exercising jurisdiction will impose severe, unique burdens on HSBC Hong Kong. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). HSBC Hong Kong's headquarters in Hong Kong is over 8,000 miles from New York, necessitates an approximate 15 hour flight to reach New York, and is 16 hours ahead of New York, making it the middle of the night tomorrow there when it is the middle of the day today here. (Yiu Decl. ¶ 20.) It is easy to say that technology "eases" these burdens, but that is cold comfort to the defendant litigating in a foreign country halfway around the world. The severe burden on HSBC Hong Kong should be taken very seriously. *See Asahi*, 480 U.S. at 114 (burden on Japanese corporation to defend lawsuit in California was "severe").

*Second Factor*: New York has *no* interest in adjudicating this case. Plaintiffs are not New York residents, so New York's "legitimate interests in the dispute have considerably diminished." *See Asahi*, 480 U.S. at 114. The bank present in New York, HSBC USA, was dismissed. The alleged fraudulent transactions were committed by WCM777 in California and the receivership proceeding against WCM777 was pursued in California. And, of course, the bank itself is in Hong Kong and conducts no business here.

*Third Factor*: Plaintiffs have no interest in obtaining convenient and effective relief, or any relief, in New York. Frankly, New York is entirely inconvenient for Plaintiffs. They are not citizens of New York, a "significant—and often dispositive—jurisdictional fact." *See Sherwin-Williams Co. v. Avisep, S.A. De C.V.*, No. 14-6227, 2016 WL 354898, at *6 (S.D.N.Y. Jan. 28, 2016) ("the presence of a New York plaintiff drastically impacts the reasonableness inquiry"); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996) (this fac-

tor "weighs heavily against" non-citizen plaintiff). They have *no connection* to New York what-soever. Even their lawyers are in California.

*Fourth Factor*: The interstate judicial system's interest in efficient resolution weighs heavily against jurisdiction in New York. It is the height of inefficiency to re-litigate the same putative class action in New York immediately after spending two years in district court in California on discovery, litigating numerous dispositive motions and orders, obtaining judgments, and commencing then dismissing appellate proceedings. The only reason Plaintiffs filed this case here is to re-litigate before a new court the claims that failed in the California Action. That is forum shopping, and forum shopping is by definition unreasonable. *See Fisher v. Teva PFC, SRL*, No. 04-2780, 2005 WL 2009908, at *4 (D.N.J. Aug. 16, 2005) (exercise of jurisdiction over foreign defendant unreasonable in part because plaintiffs "lost on this very issue in Nevada" and "appear to be shopping for *any* forum within which to sue this particular foreign defendant"); *see also In re Cypress Semiconductor Sec. Litig*., 864 F. Supp. 957, 959 (N.D. Cal. 1994) ("The filing of a successive, identical class action qualifies as abusive regardless of whether class certification was granted or denied in an earlier case; both scenarios entail unnecessary duplication.").[6]

*Fifth Factor*: Hong Kong's interest in efficiency and protecting and implementing its procedural and substantive social policies weighs against exercising jurisdiction here. *See Asahi*,

---

[6]     No benign reason for re-litigating this case exists. No newly discovered information or other articulable good faith basis exists for bringing this action again here. Plaintiffs' counsel knew about HSBC Hong Kong's correspondent account from the inception of the California Action in November 2015 (Korman Decl. ¶ 3, Ex. B ¶ 35); knew the correspondent account was in New York by at least March 2016 (Korman Decl. ¶ 6); used the account to argue that personal jurisdiction existed over HSBC Hong Kong in California when opposing HSBC Hong Kong's two motions to dismiss (*id.* ¶¶ 7, 14); never argued that New York had jurisdiction because of the correspondent account; never requested that the case be transferred to New York; knew that the California Plaintiffs' wire transfers did not pass through the account "early in the case," *see Giron*, 2017 WL 5495504 at *15; and waited to file this action until one-and-a-half years after HSBC Hong Kong was dismissed for lack of personal jurisdiction. This behavior is antithetical to the efficient administration of justice.

480 U.S. at 113, 115; *Sherwin-Williams*, 2016 WL 354898 at *6. Hong Kong "unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents." *See Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003). Hong Kong's interests, "as well as the Federal interest in Government's foreign relations policies, will be best served by … an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *See Asahi*, 480 U.S. at 115. Asserting jurisdiction in New York undermines efficiency as HSBC Hong Kong has already litigated personal jurisdiction in California and Plaintiffs' wire transfers were made more than six years ago. (*See* FAC ¶¶ 56–57.)

The relevant factors demonstrate that personal jurisdiction over HSBC Hong Kong is constitutionally unreasonable in this case. The Court should decline to exercise jurisdiction and dismiss the case against HSBC Hong Kong.

## VI.   CONCLUSION

HSBC Hong Kong is a foreign bank with no relationship to Plaintiffs that is not subject to personal jurisdiction in this Court, just as it was not subject to personal jurisdiction in California. HSBC Hong Kong respectfully requests that this Court grant its renewed motion to dismiss the FAC with prejudice.

Dated:  New York, New York
　　　　November 8, 2019

KATTEN MUCHIN ROSENMAN LLP

By: /s/ Gregory S. Korman
　　　 Gregory S. Korman

Stuart M. Richter (admitted *pro hac vice*)
stuart.richter@katten.com
Gregory S. Korman (admitted *pro hac vice*)
greg.korman@katten.com
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Ph. (310) 788-4400

25

Fax (310) 788-4471

Craig A. Convissar
craig.convissar@katten.com
575 Madison Avenue
New York, New York 10022
Ph. (212) 940-8800
Fax (212) 940-8776

*Attorneys for Defendant The Hongkong and
Shanghai Banking Corporation Limited*

26